**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GRACO INC. and GRACO MINNESOTA INC.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CARLISLE CONSTRUCTION MATERIALS, LLC,<br><br>　　　　　Defendant. | C.A. No. 21-245-JLH-SRF |
| CARLISLE CONSTRUCTION MATERIALS, LLC, and CARLISLE COMPANIES, INC.,<br><br>　　　　　Counterclaim Plaintiffs,<br><br>　　v.<br><br>GRACO INC. and<br>GRACO MINNESOTA INC.,<br><br>　　　　　Counterclaim Defendants. | |

**COUNTERCLAIM DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTERCLAIM
PLAINTIFFS' ANTITRUST COUNTERCLAIMS (COUNTS VI AND VII)
PURSUANT TO FED. R. CIV. P. 12(c)**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT                                1

FACTUAL AND PROCEDURAL BACKGROUND                                  6

LEGAL STANDARD                                                     7

ARGUMENT                                                           8

    A.  Carlisle Has Failed to Plead, and Cannot Plausibly Allege, That the '172 Patent  Dominates Any Properly Defined Relevant Market          9

    B.  Carlisle Has Failed to Plead, and Cannot Plausibly Allege, That Graco Has Used the '172 Patent to Obtain Market or Monopoly Power          12

    C.  Carlisle Has Failed to Plead, and Cannot Plausibly Allege, That Graco's Challenged Patent-Related Conduct Has Caused, or Threatens to Cause, Any Cognizable Antitrust Injury                                       16

CONCLUSION                                                        18

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                           **Page(s)**

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)....................................................................................................16

*Brunswick Corp. v. Riegel Textile Corp.*,
    752 F.2d 261 (7th Cir. 1984) ................................................................................2, 8, 9

*Christen, Inc. v. BNS Indus., Inc.*,
    517 F. Supp. 521 (S.D.N.Y. 1981).....................................................................4, 16

*Delano Farms Co. v. California Table Grape Comm'n*,
    655 F.3d 1337 (Fed. Cir. 2011)...............................................................................8

*Ekco Products v. Dare Plastics, Inc.*,
    No. 4075, 1972 U.S. Dist. LEXIS 14339 (S.D. Ohio Apr. 5, 1972)..................15, 16

*Gaines v. Chicago Bd. of Educ.*,
    No. 19 C 775, 2024 WL 640802 (N.D. Ill. Feb. 15, 2024).......................................6

*GlobalTap LLC v. Smart Tap LLC*,
    No. 13-C-5322, 2015 WL 791256 (N.D. Ill. Feb. 24, 2015) .............................5, 18

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006)...................................................................................................9

*Oasis Indus., Inc. v. G.K.L. Corp.*,
    No. 92 C 4814, 1993 U.S. Dist. LEXIS 3992 (N.D. Ill. Mar. 29, 1993) ...........2, 12

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*,
    187 F. Supp. 3d 483 (D.N.J. 2016) .....................................................................5, 18

*Papst Motoren GMBH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*,
    629 F. Supp. 864 (S.D.N.Y. 1986)......................................................................3, 12

*Pastore v. Bell Tel. Co. of Pennsylvania*,
    24 F.3d 508 (3d Cir. 1994).......................................................................................3

*Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018).................................................................................4, 17

*Pollenex Corp. v. Sunbeam-Home Comfort*,
    No. 92 C 98, 1992 WL 199080 (N.D. Ill. Aug. 7, 1992)..................................11, 12

*Regeneron Pharmaceuticals, Inc. v. Novartis Pharma, AG*,
    96 F.4th 327 (2d Cir. 2024) .........................................................................10, 11, 12

*Rosenau v. Unifund Corp.*,
  539 F.3d 218 (3d Cir. 2008)...................................................................................7

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993)...........................................................................................3

*TransWeb, LLC v. 3M Innovative Props. Co.*,
  812 F.3d 1295 (Fed. Cir. 2016)...........................................................................8

*United States v. E. I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956)...........................................................................................3

*Venetec Int'l, Inc. v. Nexus Med., LLC*,
  541 F. Supp. 2d 612 (D. Del. 2008)....................................................................8

*Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*,
  382 U.S. 172 (1965)....................................................................................*passim*

*Weber-Stephens Prods. LLC v. Sears Holding Corp.*,
  No. 1:13-cv-01686, 2015 WL 832306 (N.D. Ill. Feb. 24, 2015)...............................2, 4, 8, 16

**STATUTES**

Sherman Antitrust Act Section 2 .........................................................................*passim*

**RULES**

Federal Rules of Civil Procedure Rule 12(c).......................................................*passim*

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case began as a bitter patent dispute between two commercial rivals.  But after several years of case development there is little to justify continued litigation.  The amount in controversy is quite small relative to what it would cost even to proceed through summary judgment, much less a trial, and the only patent still at issue—United States Patent No. 7,527,172 ("the '172 Patent")—is set to expire in November of this year.  It would be in the parties' interests to settle and avoid further litigations costs, and a settlement would likely be feasible now, but for one thing: Carlisle's *Walker Process* antitrust counterclaims, both of which arise under Section 2 of the Sherman Antitrust Act.

In June 2023, Carlisle filed the *Walker Process* counterclaims after obtaining leave to amend.[1]  Graco—then represented by prior counsel—opposed leave to amend but did not subsequently move to dismiss the counterclaims.  Now represented by new counsel, Graco hereby timely moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings on Carlisle's *Walker Process* counterclaims because those claims, as pled, are fatally and incurably defective.  There are other fundamental deficiencies in Carlisle's claims that could be challenged at summary judgment on the basis of the record, and Graco appreciates that the deadline for filing summary judgment motions is approaching.  However, considerable resources would be expended briefing and arguing summary judgment, and this would impose burdens on the Court as well—unnecessarily, in Graco's view.  In the end, Carlisle has a burden to both *plead* and *prove* valid antitrust counterclaims, and its failure to do the former is independent cause for dismissal.  The present motion offers the Court an opportunity to proceed efficiently by ruling, as a matter of law, on critical defects evident on the face of the pleadings that cannot be cured.  There

---

[1] Carlisle's counterclaims are included within its First Amended Answer to First Amended Complaint and Counterclaims (D.I. 148) (hereinafter "Countercl.").

are three critical pleading defects, any one of which would warrant dismissal pursuant to Rule 12(c).

*First*, to state a valid Sherman Act antitrust claim on a *Walker Process* theory, the claimant must plausibly allege that the challenged patent-related conduct poses a genuine threat of monopolization within a well-defined relevant market. The Supreme Court's *Walker Process* decision made this clear, holding that "dominance of the patented device[s]" within "the relevant market for the product involved" is an essential prerequisite for antitrust liability. *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 177-78 (1965). *Walker Process* claims thus depend on pleading and proof of "***the exclusionary power of the . . . patent*** [within] . . . the relevant market," which implicates, among other things, whether "[t]here may be effective substitutes for the device which do not infringe the patent." *Id.* (emphasis added). As later court decisions have held, "If a patent has no significant impact in the marketplace, the circumstances of its issuance"—the crux of any *Walker Process* complaint—"*cannot* have any antitrust significance" as a matter of law, and the claim is therefore subject to dismissal. *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 264-65 (7th Cir. 1984) (emphasis added); *see also Weber-Stephens Prods. LLC v. Sears Holding Corp.*, No. 1:13-cv-01686, 2015 WL 832306, at *6 (N.D. Ill. Feb. 24, 2015) (dismissing *Walker Process* claim for lack of proof "that the [challenged] patent . . . dominate[s] the market"); *Oasis Indus., Inc. v. G.K.L. Corp.*, No. 92 C 4814, 1993 U.S. Dist. LEXIS 3992, at *23 (N.D. Ill. Mar. 29, 1993) (holding that "the dominance of the patented device" within a well-defined market is "required by *Walker Process*" and dismissing in part due to the absence of such allegations).

Carlisle's *Walker Process* counterclaims allege two alternative relevant product markets— a market for all "fast-set equipment," and a "submarket for plural component spray guns,"

Countercl. ¶ 88—but there is *no* allegation that the '172 Patent has a dominant influence in either asserted market; *no* allegation that devices arguably covered by the patent are market-dominant; and *no* allegation about the absence of non-infringing alternatives or the relative market dominance of patented versus non-infringing devices. These fundamental pleading defects are not curable. There is a reason why Carlisle failed to allege these things. There simply is no basis to allege that the '172 Patent has sufficient scope or market significance to create a plausible threat of monopolization, and this alone is cause for dismissal. *See also Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F. Supp. 864, 872 (S.D.N.Y. 1986) (dismissing where, among other pleading defects, the *Walker Process* counterclaim failed to include allegations concerning "the portion of the relevant market allegedly dominated by [defendant's] patents").

*Second*, courts have held that it is essential to any *Walker Process* claim that the claimant plead and prove that the defendant *used* the challenged patent to *obtain* market or monopoly power.[2] Where the most the claimant can plead or prove is that the defendant possesses market power for reasons *unrelated* to use of the patent in question, this is a fatal defect that also justifies dismissal. The present case is a textbook example. While Carlisle alleges that Graco possesses

_____

[2] Courts addressing Sherman Act Section 2 antitrust claims sometimes use the terms "market power" and "monopoly power" interchangeably. To prove monopolization, a plaintiff must demonstrate that the defendant improperly acquired or maintained "monopoly power," which the Supreme Court has defined as "the power to control prices or exclude competition." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). To prove attempted monopolization, a plaintiff must demonstrate that the defendant, through improper exclusionary conduct, had a "dangerous probability of success" in achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993). "Market power," which is typically understood by courts as something less than monopoly power, also may be viewed as a prerequisite showing for *any* form of Section 2 liability. In other words, even for the lesser offense of attempted monopolization, plaintiffs are required to plead and prove that the defendant at a minimum possesses significant market power. *See, e.g.*, *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 513 (3d Cir. 1994) (explaining that a plaintiff asserting an attempted monopolization claim "must . . . show that the defendants possessed 'sufficient market power' to come dangerously close" to successfully monopolizing "that market") (citation omitted).

"market power [in] . . . the U.S. and North American markets for fast-set equipment and plural component spray guns," Countercl. ¶ 98, it never clearly alleges that Graco obtained such power through procurement and enforcement of the '172 Patent or any related conduct, and it provides no factual averments to reasonably support such a conclusion. Indeed, according to Carlisle's counterclaims, any market power Graco possesses in the asserted relevant markets originated more than a decade ago as a result of acquisitions, not patent conduct. *See id.* ¶ 99 (alleging that "Graco *obtained* its dominant market share by pursuing a strategy of acquiring its competitors") (emphasis added). Numerous *Walker Process* cases have been dismissed due to similar pleading deficiencies, and once again this defect in Carlisle's pleading is incurable as there is no plausible factual basis to allege that Graco **used** the '172 Patent, which is limited in scope to certain plural component spray gun design features, to **obtain** market power. *See Christen, Inc. v. BNS Indus., Inc.*, 517 F. Supp. 521, 524 (S.D.N.Y. 1981) (finding *Walker Process* counterclaim "legally deficient" because counterclaimant failed to allege "that the patent gave plaintiff [market] power"); *Weber-Stephens Prods.*, 2015 WL 832306, at *5 (dismissal was justified because, while defendant was claimed to possess monopoly power, claimant "never argued that [defendant] *used the . . . patent* to get that power") (emphasis added).

*Finally*, in connection with any private Sherman Act case—including one brought on a *Walker Process* theory—it is incumbent upon the plaintiff to plead and prove "antitrust injury," meaning that the complained-of conduct caused harm to market-wide competition, *and* that the plaintiff's own asserted injuries flow from the same competition-reducing aspects of the defendant's actions. It is not sufficient to plead only that the plaintiff itself has been harmed by the defendant's actions untethered to any broader alleged harm to competition. *See, e.g.*, *Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 344 (3d Cir. 2018) (affirming

dismissal where appellants "allege[d] their own injury" but "[t]ellingly . . . fail[ed] to aver an antitrust injury, such as a negative impact on . . . competition in general, let alone any link between this [competitive market] impact and the harms [they claimed to have suffered").

However, that is exactly what is before the Court here—antitrust counterclaims that allege generalized harm to Carlisle's business with no well-pled allegation of harm to competition, much less any claim that Carlisle's asserted injuries coincide with any material reduction of competition across either of the asserted relevant markets. To the extent Carlisle's allegations give any attention to these issues at all, it is through wholly inadequate, conclusory pleading. Carlisle merely alleges that Graco's challenged conduct "has caused harm to the competitive process," Countercl. ¶ 99, but the pleadings contain no plausible factual support for this contention. In particular, there is no allegation that Graco's patent-related conduct has impacted any other firm's ability to compete, and no factual averments to substantiate that the market as a whole has been adversely impacted, or is at risk of being harmed, by Graco's challenged patent conduct. *See, e.g.*, *GlobalTap LLC v. Smart Tap LLC*, No. 13-C-5322, 2015 WL 791256, at *5 (N.D. Ill. Feb. 24, 2015) (dismissing *Walker Process* counterclaim where claimant's allegations failed to identify "any competitors other than itself, let alone any consumers, that have been harmed"). Once again, there are obvious reasons why Carlisle's pleading stops where it does—it simply is not plausible to allege any genuine antitrust injury on the facts in question here, and this is an independent basis for dismissal. *See, e.g.*, *Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*, 187 F. Supp. 3d 483, 486-87 (D.N.J. 2016) (dismissing *Walker Process* counterclaim where allegations were based on an alleged "adverse financial effect" on the claimant's own business without any contention that the defendant's challenged patent conduct "somehow harmed the competitive landscape" and thus no averment of "a qualifying antitrust injury").

It is regrettable that Carlisle has come this far in pursuing antitrust counterclaims that are so thoroughly and incurably defective. Yet it is not too late to remedy this problem. Rule 12(c) provides a vehicle for the Court to enter judgment on the pleadings at any time after the pleadings are closed, provided the motion is filed early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). Courts routinely accept such motions as timely when, as here, they are filed before the deadline for dispositive motions and months in advance of trial—particularly where "addressing the motion may streamline trial." *Gaines v. Chicago Bd. of Educ.*, No. 19 C 775, 2024 WL 640802, at *20 (N.D. Ill. Feb. 15, 2024).[3]

The present motion not only could streamline the trial in this case but could obviate any need for a trial and indeed any need for continued litigation. Given the unique circumstances of this case—including the small volume of claimed patent damages and the imminent expiration of the patent—Carlisle's *Walker Process* counterclaims are the principal remaining obstacle to a final resolution. And yet, for reasons addressed herein, those counterclaims are fatally and incurably defective. Graco therefore respectfully requests that the Court give attention to the pleadings-based issues framed by this Motion, and—in view of the multiple critical deficiencies in the pleadings—that the Court dismiss Carlisle's *Walker Process* counterclaims with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Graco Inc. and Graco Minnesota Inc. (collectively, "Graco") initially filed this lawsuit on February 22, 2021, asserting that Carlisle Construction Materials, LLC ("Carlisle") had infringed

---

[3] In this very recent decision, the court allowed the 12(c) motion "even after the dispositive motion deadline." *Id.* By contrast, here Graco is moving for judgment on the pleadings nearly two months before the dispositive motion deadline in hopes that a decision on these critical pleadings-based issues will facilitate an efficient resolution of the case, avoiding further unnecessary litigation expenses, including the expense of completing full briefing and argument on patent- and antitrust-related summary judgment issues.

the '172 Patent[4] through the production and sale of Carlisle's ST1 Air Purge Spray Gun.  Nearly two years later, on April 21, 2023, Carlisle sought leave to file an amended answer, an inequitable conduct defense, and related *Walker Process* counterclaims.  In opposing leave to amend, Graco argued that Carlisle's proposed inequitable conduct defense was conclusory and lacked factual support, and that the proposed *Walker Process* counterclaims were futile for the same reason.  Judge Connolly allowed the requested amendments and Graco, then represented by prior counsel, elected to answer the new counterclaims rather than file a motion to dismiss.

On March 18, 2024, the undersigned attorneys entered appearances as Graco's new counsel in this matter (D.I. 282).  After a careful review of the pleadings and applicable law, we quickly identified the issues addressed herein and prepared this Motion for filing as promptly as possible.  Rule 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  There should be no concern about this Motion causing any delay of trial.  Trial is currently set to commence on December 2, 2024.  Far from delaying trial, this Motion offers the potential to facilitate efficient resolution of the case a whole, obviating the need for any trial.

## LEGAL STANDARD

A court may enter judgment on the pleadings pursuant to Rule 12(c) where "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and

---

[4] Graco initially asserted that Carlisle also had infringed another patent, U.S. Patent No. RE46,002; however, Graco and Carlisle later filed a joint motion to dismiss this claim from the suit (D.I. 43).

documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008).

## ARGUMENT

Carlisle asserts two Sherman Act antitrust counterclaims—a claim of monopolization (Count VII) and a claim of attempted monopolization (Count VI)—both expressly predicated on a "*Walker Process*" theory. *See* Countercl. ¶¶ 85-110. To succeed on a *Walker Process* antitrust claim, the plaintiff must plead and ultimately prove "*first*, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and *second*, all other elements necessary to establish . . . Sherman Act [liability]." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016) (emphasis added). This Motion concerns the second of these two requirements.

As the Supreme Court explained in *Walker Process*, there is normally a limited grant of antitrust immunity for patents. "A successful *Walker Process* claim pierces that immunity." *Weber-Stephen Prods.*, 2015 WL 832306, at *4; *see Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1351 (Fed. Cir. 2011) ("A patent owner or assignee that enforces a patent that was procured by fraud on the PTO loses the exemption from antitrust liability that ordinarily protects a patent holder in its enforcement efforts."). Balancing the interests between the patent and antitrust laws, *Walker Process* allows antitrust liability *only* in circumstances in which a defendant, through fraudulent procurement of a patent, achieved true market dominance—or came so close as to achieve a "dangerous probability" of monopolization. Either way, a *Walker Process* "monopolization-by-patent" claim must be supported by plausible fact allegations and persuasive proof demonstrating that the patent in question has "*antitrust significance*." *Brunswick*, 752 F.2d at 265 (emphasis added). Many *Walker Process* counterclaims have failed because, even based

8

on the pleadings, it is apparent that the patent at issue *does not* dominate the market, *was not* used to obtain market power, and even if arguably procured and enforced through improper actions, *did not* result in market-wide harm to competition, as distinguished from mere harm to an individual competitor. That is exactly the situation presented here, and these same serial shortcomings in Carlisle's *Walker Process* pleadings mandate dismissal.

### A. Carlisle Has Failed to Plead, and Cannot Plausibly Allege, That the '172 Patent Dominates Any Properly Defined Relevant Market

In its *Walker Process* decision, the Supreme Court made clear that "to establish monopolization or [an] attempt to monopolize" based on a fraudulent patent procurement theory, one prerequisite is that the patent in question must be shown to have "**exclusionary power** [in] . . . the relevant market for the product involved." 382 U.S. at 177 (emphasis added). As the Supreme Court later observed in a different case, "a patent does not necessarily confer market power upon the patentee." *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45 (2006). And where that is true, even if the patent was procured through inequitable conduct, there is no basis for an antitrust claim. As Judge Posner said in *Brunswick*, "Getting a patent by means of a fraud . . . *can*, *but does not always*, violate section 2 of the Sherman Act." 752 F.2d at 264 (emphasis added). For inequitable conduct to support an antitrust action, "The patent **must dominate** a real market." *Id.* at 265 (emphasis added). Carlisle's *Walker Process* claim falters on this very first threshold issue.

Carlisle alleges inequitable conduct involving the '172 Patent. It alleges relevant product markets and that "Graco has long held a dominant share" in those markets. Countercl. ¶ 92. And it makes at least a conclusory allegation of intent "to monopolize." *Id.* ¶ 97. Yet what is glaringly missing from Carlisle's pleadings is any allegation that the '172 Patent itself **dominates** any market. Carlisle's pleadings do not so much as hint at that. There is no claim at all about the

market significance of the '172 Patent or spray gun devices using the patent.  One is left to speculate whether *most* spray guns sold in the U.S. arguably use patented designs covered by the '172 Patent, or to the contrary whether *very few* do.  There is no mention of non-infringing alternatives to spray guns using the '172 Patent's claimed designs, or the relative market shares of infringing versus non-infringing products.  Again, one is left to speculate whether very few non-infringing alternatives exist, or whether the market is brimming with alternative, non-infringing products.  In short, Carlisle's antitrust pleadings give ***zero*** attention to the single most important question on which any *Walker Process* antitrust claim may stand or fall—*i.e.*, does this patent have "***exclusionary power*** [in] . . . the relevant market for the product involved."  *Walker Process*, 382 U.S. at 177 (emphasis added).  This is a fatal pleading defect requiring dismissal.

*Walker Process* pleadings are often challenged on similar grounds.  Some challenges are successful and some are not, but the determinant is the nature and depth of the factual allegations, and Carlisle's pleadings come nowhere close to the line of sufficiency.  The Second Circuit dealt with these same issues in a very recent decision, *Regeneron Pharmaceuticals, Inc. v. Novartis Pharma, AG*, 96 F.4th 327 (2d Cir. 2024).  In that case, the appellate court reversed the lower court's decision dismissing a *Walker Process* claim, but in so doing reiterated the same pleading standards summarized above.  The court confirmed that a *Walker Process* plaintiff *must* plead that the patent in question has "exclusionary power [in] . . . the relevant market," but concluded that the plaintiff (Regeneron) satisfied this requirement.  *Id.* at 342.  Regeneron's *Walker Process* claim was supported by allegations that the defendants, through a "fraudulently procured" patent, were seeking to obtain "*total control* over the supply" of "*effectively all*" FDA-approved treatments in the relevant pharmaceutical product market.  *Id.* at 343 (emphasis added).  In the Second Circuit's

view, these fact-supported allegations "plausibly state[d] claims for Section 2 *Walker Process* attempted monopolization violations." *Id.*

The contrast between *Regeneron* and the present case could not be more stark. Far from alleging that the '172 Patent could enable Graco to *control effectively all* plural component spray guns, or *all* fast-set equipment, Carlisle's pleadings are entirely silent on what portion of the two asserted relevant markets is implicated by the '172 Patent. Even in the narrower plural component spray gun "submarket," there is no suggestion in Carlisle's pleadings that the '172 Patent has significant market coverage, much less a *dominant* position. A more analogous case is *Pollenex Corp. v. Sunbeam-Home Comfort*, No. 92 C 98, 1992 WL 199080 (N.D. Ill. Aug. 7, 1992), where Sunbeam's *Walker Process* counterclaim against Pollenex was summarily dismissed. As in this case, the principal problem was what Sunbeam "*failed to allege*." *Id.* at *2 (emphasis added). Sunbeam (like Carlisle here) had "not alleged dominance of Pollenex's patent in the relevant market," and "the relevant market Sunbeam defined [was] much broader than the scope of the disputed patent." *Id.* These defects alone, in the court's view, provided sufficient basis to conclude that Sunbeam "fail[ed] to state a cognizable section two claim," *id.*, but the court proceeded further. It noted that the Supreme Court in *Walker Process* said it was "*necessary* to appraise the *exclusionary power* of the . . . patent in terms of the relevant market," yet given the paucity of Sunbeam's market-related allegations the court observed that it "*cannot even begin* that analysis"—which is equally true here. *Id.* (citation omitted; emphasis added). The court further underscored that to support a *Walker Process* claim "the patent *must dominate a real market*," yet Sunbeam's "vague assertion" that Pollenex had substantial market sales fell far "short of alleging" the kind of "*economic domination*" that is required. *Id.* (citation omitted; emphasis added). In conclusion, the court stressed that "the pleader of an antitrust claim may not evade the requirements

of the Sherman Act by merely alleging a bare legal conclusion." *Id.* (citation and internal punctuation omitted). Because Sunbeam altogether failed to allege that Pollenex's patent had a market-dominant position, the case was dismissed without leave to amend.

The same result is justified here because it would be impossible for this Court to assess based on Carlisle's pleadings whether the '172 Patent is in any plausible respect a market-dominant patent. *See also Papst Motoren GMbH*, 629 F. Supp. at 872 (dismissing *Walker Process* counterclaim that included no allegations concerning "the portion of the relevant market allegedly dominated by [defendant's] patents"); *Oasis Indus.*, 1993 U.S. Dist. LEXIS 3992, at *23 (dismissing *Walker Process* claim on similar grounds).

**B.  Carlisle Has Failed to Plead, and Cannot Plausibly Allege, That Graco Has Used the '172 Patent to Obtain Market or Monopoly Power**

As explained above, Carlisle's pleadings utterly fail to address whether the '172 Patent dominates any relevant market and Carlisle provides no factual allegations at all that would allow the Court to assess the "*exclusionary power*" of the patent, as *Walker Process* requires. That pleading defect warrants dismissal, but there is an additional, related problem. Monopolization and attempted monopolization claims require pleading and proof of a causal link between the conduct being challenged and the market impacts being alleged. In the *Walker Process* context, this means that the plaintiff, at the pleading stage, "must separately explain how the fraudulently obtained patent ***enabled*** the defendants to achieve market power within the relevant market"—or put differently, how the defendant's "***use*** of th[e] patent ***conferred*** monopoly power in the relevant market." *Regeneron*, 96 F.4th at 342 (emphasis added).

These pleading requirements serve a critical purpose in distinguishing potentially viable *Walker Process* claims from those that have no realistic prospect of success. It is not uncommon, for instance, that a *Walker Process* claimant will allege that the defendant possesses generalized

market power (or high market share) but have no basis to assert that the defendant *obtained* that power through *use* of the disputed patent, and where this is the case courts routinely grant dismissal. That is exactly the situation we have here.

Carlisle alleges that "Graco has long held a dominant market share" in the asserted relevant markets and that "Graco currently has more than 75% market share in those markets." Countercl. ¶ 104. Carlisle further alleges that "Graco currently possesses monopoly power" in those markets. *Id.* ¶ 107. Alternatively, Carlisle alleges that Graco "possessed sufficient market power to come dangerously close to success in achieving monopolization." *Id.* ¶ 98. What is missing in the pleadings is any clear, fact-based allegation that Graco **obtained** market or monopoly power through **use** of the '172 Patent. The closest Carlisle comes to this are the following two paragraphs included within Carlisle's pleading of Count VII (monopolization):

> 107.    In light of Graco's anticompetitive conduct and dominant market share, Graco currently possesses monopoly power in the U.S. and North American markets for fast-set equipment and plural component spray guns.

> 108.    Graco has willfully acquired that monopoly power by engaging in anticompetitive conduct, including by committing fraud on the USPTO, by enforcing the '172 patent against its competitors, including Carlisle, and by threatening patent-related litigation against distributors.

Yet these vague allegations do not go nearly far enough to plausibly support the conclusion that Graco *obtained* market or monopoly power through *use* of the '172 Patent.

Part of the problem is that Carlisle, in its counterclaim allegations, causally links Graco's alleged "dominant market share" to two acquisitions completed by Graco nearly twenty years ago, in 2005 and 2007. *See* Countercl. ¶ 92 (referring to Graco's acquisitions of "Gusmer and

GlasCraft").[5]  Specifically, Carlisle alleges that Graco "*obtained*" its "long held dominant market share" "*by pursuing a strategy of acquiring its competitors*," referring to those same two mid-2000s-era acquisitions. *Id.* ¶ 92 (emphasis added).  Thus, according to Carlisle, Graco has "*long*" possessed a "dominant" market position and "obtained" this alleged "*long held* dominan[ce]" through conduct (namely, acquisitions) that is **wholly unrelated** to any *use* of the '172 Patent.  *Id.* (emphasis added).

While these prior acquisitions are irrelevant to the patent issues framed by Carlisle's *Walker Process* claims, Carlisle injects these extraneous allegations in a misguided attempt to suggest that Graco engaged in past, unrelated anticompetitive conduct resulting in a dominant market position.  And, according to Carlisle's pleadings, this preexisting "long held" dominance is something that "*continues*" through the current day.  Countercl. ¶ 95 (emphasis added).  Hence, when one later comes to the allegation in Paragraph 107 of the counterclaims—which reads in part, "In light of Graco's anticompetitive conduct and dominant market share, Graco currently possesses monopoly power"—it is unclear exactly what Carlisle intends to say.  The "anticompetitive conduct" being referenced would appear to refer at least in part to the 2005 and 2007 acquisitions, and the "dominant market share" being referenced appears to be the same "long held dominant market share" that Carlisle attributes to those acquisitions and claims to have "continue[d]" in the aftermath of those acquisitions.  *Id.* ¶¶ 92, 95.

Paragraph 108 presents similar issues.  Carlisle there alleges that "Graco has *willfully acquired* . . . monopoly power by engaging in anticompetitive conduct, *including* by committing

---

[5] The dates of these acquisitions are not disclosed in Carlisle's allegations, but Carlisle incorporates by reference related FTC consent order materials, including a draft FTC complaint included as part of the settlement of that FTC matter, which the Court may now take judicial notice of, and which does disclose the acquisition dates as being in 2005 and 2007.  *See* Countercl. ¶ 92 (referencing the FTC's 2013 acquisition-related draft complaint and providing a related URL).

fraud on the USPTO, by enforcing the '172 patent against its competitors, including Carlisle, and by threatening patent-related litigation against distributors." *Id.* ¶ 108 (emphasis added). The "anticompetitive conduct" referenced here would appear again to refer *at least in part* to the 2005 and 2007 acquisitions—the alleged source of Graco's "long held" dominance. The fact that Carlisle then qualifies the term "anticompetitive conduct" by signaling that it "*include[es]*" actions taken to acquire and enforce the '172 Patent reinforces this understanding, as it signals that Carlisle means to refer to some combination of alleged "anticompetitive conduct" that may include, yet clearly extends beyond, the patent-related conduct at the core of its *Walker Process* claims. In other words, the conclusory allegations in Paragraphs 107 and 108, which only vaguely reference "anticompetitive conduct," fall well short of alleging any clear causal link between Graco's procurement and enforcement of the '172 Patent and any asserted market or monopoly power.

These issues aside, nowhere within the counterclaim allegations does Carlisle purport to explain whether the allegedly high Graco market shares that Carlisle relies upon as indicia of market power reflect sales of products covered by the '172 Patent, or alternatively whether Graco's sales are predominately driven by products using designs outside the scope of the '172 Patent's claims. In this and other respects, this case closely resembles the circumstances addressed in an early, often-cited *Walker Process* dismissal decision, *Ekco Products v. Dare Plastics, Inc.*, No. 4075, 1972 U.S. Dist. LEXIS 14339 (S.D. Ohio Apr. 5, 1972). The *Walker Process* counterclaimant there alleged "in conclusory terms" that the defendant had product sales "constitut[ing] a substantial portion of the relevant market," akin to Carlisle's allegations that Graco has a high market share. *Id.* at *6. While in the court's view such allegations fell "short of alleging" true market dominance, even assuming the counterclaimant had pled such dominance, what was missing was any allegation "that the exclusionary power of the illegal patent claims, *in*

*and of itself*," was the source of such market power.  *Id.* (emphasis added).  In the court's words, a "[*Walker Process*] counterclaimant must **allege and prove** . . . that the fraudulently procured patent **enabled** the holder thereof to **obtain** the economic dominance or power to control prices in or exclude competition from the relevant market."  *Id.* at *3 (emphasis added).  Thus, mere allegations that the defendant's overall sales comprised "a substantial portion of the relevant market, *in the absence of an allegation that these were derived from products within the scope of the illegal patent*, fail[ed] to state a claim under *Walker Process*."  *Id.* (emphasis added). Subsequent court decisions involving similar allegations have cited and followed *Ekco Products*. *See, e.g.*, *Christen Inc.*, 517 F. Supp. at 524 (dismissing *Walker Process* counterclaim where there was no clear allegation "that *the patent*" itself "*gave* plaintiff the power to exclude competition or control prices in the relevant market") (emphasis added; citing and relying upon *Ekco Products*).

These and similar cases point to an additional critical defect in Carlisle's pleadings and an independent basis for dismissal.  In short, nothing alleged in Carlisle's counterclaims suggests that Graco has *used* the '172 Patent to *obtain* market power.  *See also, e.g.*, *Weber-Stephen Prods.*, 2015 WL 832306, at *5 (dismissing *Walker Process* claim at summary judgment where counterclaimant "argued that [defendant] holds monopoly power" but "never argued that [defendant] *used* the [challenged] patent to get that power") (emphasis in original).

### C.    Carlisle Has Failed to Plead, and Cannot Plausibly Allege, That Graco's Challenged Patent-Related Conduct Has Caused, or Threatens to Cause, Any Cognizable Antitrust Injury

There is one final defect in Carlisle's *Walker Process* allegations that justifies dismissal and that is Carlisle's failure to properly allege antitrust injury.  It is well established that even to have *standing* to bring an antitrust claim an antitrust plaintiff must plead "an antitrust injury," meaning an "injury of the type that antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429

U.S. 477, 489 (1977).  As the Third Circuit has explained, "the antitrust injury requirement ensures that damages are only awarded for losses that correspond to the rationale for finding a violation of the antitrust laws in the first place," and it requires that "there must be a causal link between the [plaintiff's] alleged injury and an antitrust violation's anticompetitive effects."  *Philadelphia Taxi Ass'n*, 886 F.3d at 343.  That same Third Circuit decision upheld dismissal of an antitrust complaint because the plaintiff "allege[d] their own injury" but "fail[ed] to aver [any] . . . negative impact on consumers or to competition in general, let alone any link between this [competitive] impact and the harms [the plaintiff claimed to] have suffered."  *Id.* at 344.  This aptly describes the situation presented here.

Carlisle claims that its business has been adversely impacted by Graco's alleged patent-related conduct.  It specifically claims that Graco's conduct has caused it "to suffer lost profits and require[ed] Carlisle to expend substantial amounts of money, time, and human resources to defend against Graco's fraudulently obtained patent."  Countercl. ¶ 99; *see also id.* ¶ 109.  There is also a vague and wholly conclusory allegation that "Graco's anticompetitive conduct has caused harmed to the competitive process."  *Id.* ¶ 99; *see also id.* ¶ 109.  But the pleadings contain no explanation of how the market as whole has been injured by anything Graco is alleged to have done, or how Carlisle's alleged injuries coincide with or otherwise derive from any *competition-reducing* effects of Graco's actions.  Indeed, as discussed above, Carlisle's allegations altogether fail to establish a linkage between Graco's use of the '172 Patent and the competitive dynamics of the asserted relevant markets.  There is *no claim* that the '172 Patent confers market dominance on Graco; *no claim* that the '172 Patent has enabled Graco to obtain market or monopoly power; and correspondingly *no claim* that competition as a whole within any relevant market has been materially lessened or reduced owing to Graco's procurement and enforcement of this single

patent.  Accordingly, what Carlisle is left with is merely a claim that it alone has been harmed; however, allegations of harm to an individual competitor are manifestly not enough to survive dismissal.  *See, e.g.*, *Otsuka Pharmaceutical*, 187 F. Supp. 3d at 487 (dismissing *Walker Process* counterclaim where claimant alleged that defendant's actions "had an adverse financial effect on a *particular* competitor (namely, [the claimant itself])" but "fail[ed] to allege a qualifying antitrust injury" or "wider impact on the overall competitive market") (emphasis in original; citation and internal punctuation omitted); *GlobalTap LLC*, 2015 WL 791256, at *5 (dismissing *Walker Process* counterclaim where claimant's "only specific allegations relate[d] to the harm that it" had allegedly "suffered itself" "without an accompanying effect on competition") (citation omitted).

## CONCLUSION

For the foregoing reasons, Graco respectfully requests that the Court enter judgment on the pleadings in its favor on Carlisle's *Walker Process* counterclaims (Counts VI and VII), dismissing both counterclaims with prejudice pursuant to Fed. R. Civ. P. 12(c).

Dated: April 30, 2024

Of Counsel:

M. Sean Royall
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Tel: (202) 626-2994
sroyall@kslaw.com

Emily S. Newton
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2745
enewton@kslaw.com

Brent P. Ray
KING & SPALDING LLP
110 N. Wacker Drive

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/  Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Colin A. Keith (No. 7074)
Rodney Square
1000 N. King St.
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
ckeith@ycst.com
*Attorneys for Plaintiffs Graco Inc. and*
*Graco Minnesota Inc.*

Suite 3800
Chicago, IL 60606
Tel: (312) 764-6925
bray@kslaw.com

Abby L. Parsons
KING & SPALDING LLP
1100 Louisiana Street
Suite 4100
Houston, TX 77002
Tel: (713) 751-3294
aparsons@kslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 30, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT
&TUNNELL LLP
1201 North Market Street
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Carlisle Construction Materials, LLC and Carlisle Companies, Inc.*

Gregg F. LoCascio, P.C.
Nathan S. Mammen
Matthew S. Owen, P.C.
Nichole DeJulio
Karthik Ravishankar
Cole T. Tipton
Meredith Pohl
Mary-Kathryn Hawes
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Alexandria Ray
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Dated: April 30, 2024

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Colin A. Keith (No. 7074)
Rodney Square
1000 N. King St.
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
ckeith@ycst.com

*Attorneys for Counterclaim Defendants Graco Inc. and Graco Minnesota Inc.*

20