IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRACO INC. and GRACO MINNESOTA INC., | |
| Plaintiffs, | C.A. No. 21-245 (JLH) (SRF) |
| v. | **DEMAND FOR JURY TRIAL** |
| CARLISLE CONSTRUCTION MATERIALS, LLC, |  |
| Defendant. | REDACTED - PUBLIC VERSION |
| CARLISLE CONSTRUCTION MATERIALS, LLC, and CARLISLE COMPANIES, INC., | |
| Counterclaim Plaintiffs, | |
| v. | |
| GRACO INC. and GRACO MINNESOTA INC., | |
| Counterclaim Defendants. | |

**CARLISLE'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE THE TESTIMONY OF DR. ROBERT MANESS**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD .............................................................................................................. 4

ARGUMENT ............................................................................................................................ 5

I.      THIS COURT SHOULD PARTIALLY EXCLUDE DR. MANESS'S
        OPINIONS....................................................................................................................... 5

        A.      Dr. Maness's Anticompetitive-Effects And Barriers-To-Entry Opinions
                Are Unreliable And Should Be Excluded. ............................................................. 5

        B.      Dr. Maness's Geographic Market Opinion Is Unreliable And Should Be
                Excluded Because It Is Not Based In The Relevant Law. ................................... 10

        C.      Dr. Maness's Opinion That Graco's Market Power Came From Anything
                Other Than The '172 Patent Is Unreliable And Not Supported By
                Evidence................................................................................................................. 15

CONCLUSION ....................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Antrim Pharms. LLC v. Bio-Pharm, Inc.*,
    950 F.3d 423 (7th Cir. 2020) ...................................................8

*Branch v. Temple Univ.*,
    2021 WL 2823071 (E.D. Pa. July 7, 2021)...................................15

*Brill v. Marandola*,
    540 F. Supp. 2d 563 (E.D. Pa. 2008) .......................................8

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)...............................................................14

*Calhoun v. Yamaha Motor Corp.*,
    350 F.3d 316 (3d Cir. 2003).....................................................12

*Cave v. Saxon Mortg. Servs., Inc.*,
    2015 WL 6153754 (E.D. Pa. Oct. 20, 2015)..............................10

*In re ChanBond, LLC Patent Litig.*,
    2020 WL 550786 (D. Del. Feb. 4, 2020) ...................................7

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
    817 F.3d 46 (2d Cir. 2016)......................................................14

*Dalgic v. Misericordia Univ.*,
    2019 WL 2867236 (M.D. Pa. July 3, 2019)................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)................................................................5

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    2019 WL 1515231 (E.D.N.Y. Feb. 21, 2019)...............................3

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000).....................................................6

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
    82 F.3d 69 (3d Cir. 1996)......................................................5, 6

*First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*,
    2022 WL 958089 (D. Del. Mar. 30, 2022) .................................2

*Genesys Cloud Servs., Inc. v. Strahan*,
    2022 WL 19530055 (S.D. Ind. Sept. 29, 2022) ....................................................3, 7

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
    549 F. Supp. 3d 362 (D. Del. July 19, 2021) .......................................................11

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..............................................................................7

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
    306 F. App'x 781 (3d Cir. 2009) .....................................................................6, 15

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ...................................................................................5

*Shell Offshore, Inc. v. Eni Petroleum US LLC*,
    2018 WL 1518444 (E.D. La. Mar. 28, 2018) .........................................................3

*Transweb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016)...............................................................1, 11, 13

*Tunis Bros. Co., Inc. v. Ford Motor Co.*,
    952 F.2d 715 (3d Cir. 1991)................................................................................11

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965)................................................................................................2

**Statutes**

15 U.S.C. § 2.............................................................................................................2

**Rules**

Fed. R. Evid. 702.....................................................................................................5

## **INTRODUCTION**

This Court should join at least four other federal courts who excluded Graco's antitrust expert, Dr. Robert Maness. Most of his testimony here should not reach the jury. Some of his opinions are speculative and lack evidentiary support; others are unreliable because they ignore settled law.

As an initial matter, Dr. Maness's anticompetitive-effects and barriers-to-entry opinions should be excluded for two independent reasons. *First*, Dr. Maness's opinions rely on the speculation of Graco's patent damages expert, Carrie Distler, that Carlisle *could* have licensed Graco's '172 patent for ████████ in a hypothetical negotiation. But neither Ms. Distler nor Dr. Maness were aware of *any* evidence that either Carlisle or Graco were actually willing to enter into Ms. Distler's hypothetical license—and Dr. Maness did no independent analysis beyond mis-citing Ms. Distler's—so his opinions concededly lack a reliable basis. *Second*, Dr. Maness's anticompetitive-effects and barriers-to-entry opinions are also inadmissible because they rest on Dr. Maness's unsupported assertion that Carlisle *could* have designed around Graco's patents. Tellingly, Dr. Maness admittedly ignores the only competent evidence in this case on that point: that Carlisle *did* in fact design around Graco's '172 Patent, but Graco filed suit anyway. Dr. Maness's anticompetitive-effects and barriers-to-entry opinions should be excluded as unreliable.

Next, Dr. Maness's opinion regarding the geographic market ignores the relevant law. Antitrust markets are defined by "the area in which a potential buyer may rationally look for the goods or services he or she seeks." *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1308 (Fed. Cir. 2016). Contradicting that standard, Dr. Maness confuses the territorial bounds of the '172 Patent with the legally relevant geographic market. An opinion premised on the wrong legal standard does nothing to help the factfinder, and the Court should exclude it.

1

Finally, Dr. Maness's opinion that Graco's market power derives from legitimate sources, such as its purported business acumen and superior product, should also be excluded because Dr. Maness concedes there is no evidentiary support for that contention, and he conducted no expert analysis to support it.

## BACKGROUND

Graco sued Carlisle for patent infringement.  D.I. 1.  Through discovery on the patent infringement claim, Carlisle developed evidence that Graco procured U.S. Patent No. 7,527,172 ("the '172 patent") by fraud and brought counterclaims for inequitable conduct and monopolization and attempted monopolization under Section 2 of the Sherman Act.  15 U.S.C. § 2; *see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965); D.I. 148.

In support of its antitrust claims, Carlisle disclosed Dr. Divya Mathur as its antitrust expert. Dr. Mathur is a professional economist with a Ph.D. in Economics from the University of Chicago, and she is a Managing Principal at Analysis Group, Inc.  Ex. 3, D. Mathur (Carlisle Antitrust Expert) Expert Report ("Mathur Opening Rep.") at App'x A.  Dr. Mathur has been an expert in ten cases over the past four years, including in antitrust cases arising out of patent-related issues. *Id.*; Ex. 4, D. Mathur Dep. Tr. at 12:7–24, 14:2–13.  Courts, including the District of Delaware and the Southern District of New York, have accepted her opinions.  In rebuttal, Graco disclosed Dr. Robert Maness, a professional economist and Senior Managing Director at Coherent Economics. *See generally* Ex. 1, R. Maness (Graco Antitrust Expert) Rebuttal Expert Report.  His testimony has been successfully challenged at least four times:

- *First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, 2022 WL 958089, at *12 (D. Del. Mar. 30, 2022) (excluding Dr. Maness's damages opinion for failure to apportion).

- *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 2019 WL 1515231, at *6–7 (E.D.N.Y. Feb. 21, 2019) (excluding Dr. Maness's anticompetitive conduct opinions).

- *Genesys Cloud Servs., Inc. v. Strahan*, 2022 WL 19530055, at *17 (S.D. Ind. Sept. 29, 2022) (excluding Dr. Maness's opinion on secrecy of trade secrets).

- *Shell Offshore, Inc. v. Eni Petroleum US LLC*, 2018 WL 1518444, at *2 (E.D. La. Mar. 28, 2018) (excluding Dr. Maness's project costs opinion where he did no independent analysis and merely accepted and "parrot[ed] the [plaintiff's] testimony as his own").

While Carlisle does not challenge Dr. Maness's professional qualifications in this motion, his analysis in this case did not satisfy the minimum standards of reliability required by Rule 702.

Notably, Dr. Maness did not conduct any independent analysis concerning the relevant product market in this case. While Dr. Maness was asked to opine "whether [Graco's] alleged conduct has resulted in, or is likely to result in, anticompetitive effects," Ex. 1, R. Maness Expert Rep. ¶ 6, Dr. Maness's analysis was entirely dependent on Dr. Mathur's market definition. Ex. 2, R. Maness Dep. Tr. at 257:16–21. He conducted no independent analysis of the relevant product market. Ex. 1, R. Maness Expert Rep. ¶¶ 39, 44, 46; Ex. 2, R. Maness Dep. Tr. at 219:1–21. Nor did Dr. Maness independently analyze Graco's market power or the damages incurred by Carlisle due to Graco's anticompetitive conduct. *See generally* Ex. 1, R. Maness Expert Rep., §§ V, VII.

Indeed, Dr. Maness did not review or consider the vast majority of documents and depositions in this case. For instance, Dr. Maness did not consider any documents other than those listed in his Materials Considered list in Appendix B of his report. Ex. 2, R. Maness Dep. Tr. at 15:20–16:3, 123:10–12. As that Appendix and his testimony about it both confirm, he reviewed only some of the deposition transcripts in this case; he did not consider key testimony, including (among others) testimony from the following witnesses:

- Michael Sebion, Graco's Vice-President of Global Industrial Engineering, who threatened distributors with litigation if they sold or offered to sell Carlisle's ST1 spray foam gun. Ex. 2, R. Maness Dep. Tr. at 22:2–24:1; Ex. 5, Feb. 25, 2021 Letter (GRACO_0077687); Ex. 6, Mar. 31, 2021 Letter (GRACO_0883778) at -883778.

3

- Scott Selbach, Carlisle's General Counsel, who explained the costs and resources Carlisle has expended in defending against this litigation. Ex. 2, R. Maness Dep. Tr. at 26:16–27:7; Ex. 7, S. Selbach (Carlisle General Counsel) Dep. Tr. at 12:2–13:24, 18:25–20:1.

- Jason Weber, an employee of a third-party distributor, who asserted that Graco currently holds a ███ market share in the spray foam market. Ex. 2, R. Maness Dep. Tr. at 324:16–18, 326:13–327:16; Ex. 8, Jason P. Weber (Air Equipment & Repair and Southwest Air Equipment Operations Manager) Dep. Tr. at 37:1–5, 38:5–7.

Dr. Maness could not explain how his team selected the deposition transcripts he reviewed or why he did not review the aforementioned testimony. Ex. 2, R. Maness Dep. Tr. at 23:18–25:4, 26:16–18, 274:20–22; Ex. 1, R. Maness Expert Rep., App'x B. He also only considered a grand total of **four** Graco Bates-stamped documents in forming his opinions—three of which were cited in a single footnote in his barriers-to-entry opinion. Ex. 1, R. Maness Expert Rep., App'x B; *id.* ¶ 69 n.148; *see also* Ex. 2, R. Maness Dep. Tr. at 194:13–18. And while Dr. Maness considered Carlisle's interrogatory responses, he failed to consider Graco's interrogatory responses **at all**. Ex. 1, R. Maness Expert Rep., App'x B; Ex. 2, R. Maness Dep. Tr. at 121:21–123:22, 125:1–6.

Carlisle now moves to partially exclude four of Dr. Maness's opinions, at least in part:

- Dr. Mathur mischaracterized the scope of the relevant product and geographic market. Ex. 1, R. Maness Expert Rep. ¶¶ 12–13.

- Dr. Mathur failed to show that Graco possesses substantial market power. *Id.* ¶¶ 14–15; *see also id.* ¶ 6.

- Dr. Mathur failed to demonstrate anticompetitive effects resulting from Graco's alleged conduct. *Id.* ¶ 16; *see also id.* ¶ 6.

- Dr. Mathur calculated damages that are speculative and unreliable. *Id.* ¶ 17; *see also id.* ¶ 6.

## LEGAL STANDARD

Expert testimony is admissible only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–91 (1993). Playing a "gatekeeping role," the Court must ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 580. Because "expert evidence can be both powerful and quite misleading . . . the importance of the gatekeeping function cannot be overstated." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021) (cleaned up).

## ARGUMENT

### I.    THIS COURT SHOULD PARTIALLY EXCLUDE DR. MANESS'S OPINIONS.

This Court should partially exclude Dr. Maness's opinions for three reasons. ***First***, his anticompetitive-effects and barriers-to-entry opinions are unreliable and have no evidentiary basis. Both are premised on a misconstruction of Ms. Distler's hypothetical license negotiations and ignore the only competent evidence in the record that Carlisle in fact designed around the '172 Patent. ***Second***, Dr. Maness's geographic market opinion is unreliable because it misapplies the relevant law by focusing on the territorial extent of the patent instead of the geographic area of competition. ***Third***, Dr. Maness's opinion that Graco's market power came from legitimate sources, such as its superior product and business acumen, should be excluded because it is unreliable and admittedly lacks any evidentiary support or analysis disclosed in his report.

### A.    Dr. Maness's Anticompetitive-Effects And Barriers-To-Entry Opinions Are Unreliable And Should Be Excluded.

Expert testimony is inadmissible if "an opinion based upon particular facts cannot" actually "be grounded upon those facts." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) (noting that expert's opinion on how physical injuries could be avoided was inadmissible because it was "based on pure speculation, rather than a reasonable inference" and

"no evidence in the record" supported it).  "[I]f an expert opinion is based on speculation or conjecture, it may be stricken."  *Id.*; *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 755–56 & n.12 (3d Cir. 2000) (reversing admission of expert testimony and remanding for a new trial on damages because expert's assumptions that individual "could have" earned a certain wage should have been excluded for "lack[ing] foundation"; stating that "expert opinions not grounded in the facts of a case" are properly excluded); *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (excluding expert testimony because it "did not fit with the otherwise uncontroverted evidence before the Court").

Dr. Maness's opinions that Graco's anticompetitive conduct could not have had anticompetitive effects, and that Graco's patents did not constitute a barrier to entry to the market, should be excluded as unreliable because both opinions rely on speculation and ignore the only competent evidence in this case.  As explained below, both these opinions rest on the speculation that Carlisle could have avoided Graco's infringement litigation by licensing the '172 patent from Graco for ████████—despite the admitted lack of ***any*** evidence that the parties would have been willing to conclude such a deal.  Both these opinions also rely on Dr. Maness's assertion that Carlisle could have designed around the '172 Patent at low cost—despite the uncontested evidence that Carlisle ***did*** design around the '172 Patent.

***First***, Dr. Maness's opinions that Graco's alleged anticompetitive conduct could not have had anticompetitive effects, and that Graco's patents did not constitute a barrier to entry to the market, rest in part on a claim by Graco's patent damages expert that Carlisle could have—and Graco would have—licensed the '172 Patent for ██████ in a hypothetical negotiation. Ex. 1, R. Maness Expert Rep. ¶¶ 16, 68, 93–96, Fig. 10.  While a hypothetical negotiation can be an appropriate way to calculate a reasonable royalty for patent damages, it provides no basis for Dr.

6

Maness's opinion that the parties **would in fact** have agreed to such a deal.  To calculate a reasonable royalty, Ms. Distler "**assume[d]** that the parties are a willing licensor and a willing licensee and that the patents are valid and infringed." *In re ChanBond, LLC Patent Litig.*, 2020 WL 550786, at *3 (D. Del. Feb. 4, 2020) (emphasis added) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009).  Dr. Maness took that hypothetical "license," performed no independent assessment of it, and extrapolated it to his report as if the parties were in fact willing to conclude that license agreement—something that Ms. Distler did not purport to prove.  Ex. 9, C. Distler (Graco Patent Damages Expert) Expert Rep. ¶¶ 123-27; Ex. 10, C. Distler Dep. Tr. at 25:17–26:17.[1]

Indeed, neither Ms. Distler nor Dr. Maness were aware of **any** evidence that Graco actually would have been willing to offer a license to Carlisle for █████, much less that Carlisle would have been willing to accept such an offer.  *See* Ex. 10, C. Distler Dep. Tr. at 25:17–26:17; Ex. 2, R. Maness Dep. Tr. at 81:21–82:3, 84:8–18, 100:8–15; *id.* at 101:19–22 (admitting he did not recall seeing any documents that "Graco would be willing to accept **any** amount of money from Carlisle for a license for the '172 patent" (emphasis added)).  Dr. Maness did no independent analysis on

---

[1] Dr. Maness did so despite critiquing Ms. Distler for this very same flaw in a different case where she failed to assess a licensor's willingness to enter into a licensing agreement. Ex. 11, R. Maness *Genesys* Expert Rep. ¶ 13.  There, Dr. Maness explained that Ms. Distler's analysis was "fundamentally flawed" because she "fail[ed] to properly assess the bargaining positions of the two parties," and "perform[ed] no analysis of the licensee's maximum willingness to pay nor the licensor's minimum willingness to accept for a license to the alleged trade secret." *Id.*; *see* Ex. 2, R. Maness Dep. Tr. at 86:2–10 (admitting he "criticized Ms. Distler for failing to assess a licensor's minimum willingness to accept money for a license" in *Genesys*).  Dr. Maness testified that experts commonly consider the parties' relative bargaining power when opining on royalties under a hypothetical negotiation framework. *Id.* at 80:16–81:20 (admitting the "bargaining positions of the two parties" is "generally… included [] in the hypothetical negotiation framework").  Yet, Dr. Maness committed the same error for which he criticized Ms. Distler—relying on her speculative ██████ license as if it were objectively true (even though neither expert assessed Graco or Carlisle's actual willingness to enter into the license).

this point; he had no opinion "beyond what was discussed in Ms. Distler's report" regarding Graco's willingness to accept a ███████ license.[2] Ex. 2, R. Maness Dep. Tr. at 84:8–18, 100:8–15. Ms. Distler likewise had no evidence of either party's willingness to enter into her hypothetical license. Ex. 10, C. Distler Dep. Tr. at 25:17–26:17 ("As I sit here, I'm not aware of evidence that Graco would or would not be willing to license Carlisle at the hypothetical negotiation."). With no factual support or expert analysis underlying it, Dr. Maness's opinions that the parties would have agreed to a ██████ license are speculative, unreliable, and do not aid the trier of fact. *See Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 431–32 (7th Cir. 2020) (affirming exclusion of expert testimony concerning parties' agreement to share equity when expert had no "specific knowledge of any agreement" and relied on "general industry customs and practices"); *Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008) (noting that "expert[s] may not state such hypothetical propositions as objective facts, unless such facts are clearly undisputed"); *Dalgic v. Misericordia Univ.*, 2019 WL 2867236, at *14 (M.D. Pa. July 3, 2019) (excluding an expert's testimony as "purely speculative and without foundation in the record.").[3]

---

[2] Dr. Maness also failed to consider whether Carlisle, in addition to ██████, would have also had to compensate Graco for its alleged lost profits to avoid the patent infringement claim Graco filed—since Graco initially sought lost profits from Carlisle, and only revealed its ███████ royalty claim when it disclosed its expert reports. Dr. Maness conceded at his deposition that he was not aware Graco had *ever* sought lost profits, Ex. 2, R. Maness Dep. Tr. at 112:7–9, let alone that Graco had later withdrawn that claim after Carlisle filed its antitrust counterclaims, *id.* at 112:10–12; *see also id.* at 112:15–18 (admitting that he did not conduct such a lost-profits analysis). Critically, Dr. Maness admitted that lost profits are typically more valuable or of higher value than a reasonable royalty interest. *Id.* at 112:1–6.

[3] Dr. Maness's opinion that Carlisle's lost profits calculations are "overstated and unreasonable" in view of Ms. Distler's hypothetical ██████ license should be excluded for the same reasons. Ex. 1, R. Maness Expert Rep. ¶¶ 109, 113. Indeed, Dr. Maness treats Ms. Distler's hypothetical ████████ licensing figure as something it is not; the ██████ figure is in terms of Carlisle's *actual sales*—not lost sales—and it is ostensibly limited to the patented value—not the value of the *entire gun. See, e.g.*, Ex. 9, C. Distler Expert Rep. ¶¶ 123–31. Dr. Maness has no evidence that the parties would have actually been willing to transact on the ██████ license, and therefore, he has

*Second,* Dr. Maness also opines that Graco's anticompetitive conduct could not have had anticompetitive effects, and that Graco's patents did not constitute a barrier to entry to the market, because "non-infringing alternatives were readily available, suggesting that designing around the patent would have been relatively low cost." Ex. 1, R. Maness Expert Rep. ¶ 68; *see also id.* ¶¶ 16, 93; Ex. 2, R. Maness Dep. Tr. at 42:21–43:2, 43:11–14. Yet, both of these opinions completely ignore that *Carlisle had already designed around the patent.* Ex. 12, May 17, 2023 F. Sutter (Carlisle Fluid Technologies President) Dep. Tr. at 19:5–19 (" ███████████████████

███████████████████████████████████████████████████

█████████████ "); Ex. 13, Jan. 10, 2024 F. Sutter Dep. Tr. at 32:23–33:11. Dr. Maness was aware of testimony that Carlisle had expended money to design around Graco's patents, yet he never addressed it in his report. Ex. 2, R. Maness Dep. Tr. at 44:13–45:1, 46:4–47:14 ("[My report] says nothing about [Carlisle's] prior attempts to design around the patent. I agree with that."). Nor did Dr. Maness consider that further designing around the '172 patent could also result in a spray gun less preferred by customers, as Dr. Mathur pointed out, Ex. 14, D. Mathur Reply Expert Rep. ¶ 39, or that the allegedly infringing design "offers advantages . . . to users of spray guns," Ex. 9, C. Distler Expert Rep. ¶ 109, and that "Carlisle markets those benefits in its marketing materials for the accused ST1 spray gun." *Id.* ¶ 110. Dr. Maness also never took the time to determine how much it would cost to attempt to design around the '172 Patent. Ex. 2, R. Maness Dep. Tr. at 62:15–19. Nor does the '172 Patent exist in isolation: Graco has dozens of patents relating to spray guns that Carlisle would have had to consider and design around—which Dr. Maness neglected to consider. Ex. 15, Graco Patent List (GRACO_0007721) at -7730

---

no evidence to compare to Dr. Mathur's *lost profits* calculations. Ex. 2, R. Maness Dep. Tr. at 84:8–18, 101:19–22.

("Contractor PC gun"), -7731 ("Contractor PC Compact gun"), -7742–43 ("Fusion PC"), -7760 ("P2 Gun").  Thus, Dr. Maness's opinions that Graco's patents are not a barrier to entry and had no anticompetitive effects because Carlisle could have designed around the patent should be excluded as unreliable and unhelpful to the jury because they are not supported by record evidence.[4]

Altogether, Paragraphs 16, 68, and 93–96, as well as Figure 10 of Dr. Maness's report, should be excluded.

**B.    Dr. Maness's Geographic Market Opinion Is Unreliable And Should Be Excluded Because It Is Not Based In The Relevant Law.**

Dr. Maness's opinion that North America is not a proper geographic market for Carlisle's claims should be excluded because it misapplies the law governing the definition of an antitrust market.  When an expert applies the wrong law, his opinion is unreliable, not helpful to the trier of fact, and excludable.  *See Cave v. Saxon Mortg. Servs., Inc.*, 2015 WL 6153754, at \*9 (E.D. Pa.

---

[4] In fact, Dr. Maness's opinion that Graco's patents do not form a barrier to entry should be struck in its entirety because his only additional "evidence" beyond the speculative ▮▮▮▮▮ license and the possibility of designing around Graco's patents is that other companies "have designed products and entered the spray gun market despite Graco's patents." Ex. 1, R. Maness Expert Rep. ¶ 68; Ex. 2, R. Maness Dep. Tr. at 155:1–11 ("Q:  And those are all the reasons that you give in critiquing Dr. Mathur's claim that patents for spray guns are a barrier to entry, right?   A:  Correct.").  Yet, this misses the point that there is a difference between entering as a miniscule manufacturer and entering with a product and business capable of impacting competition in the spray gun market. Dr. Maness fails to consider that *none* of the companies he points to—▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮—have grown into substantial competitors in the spray foam gun market that meaningfully compete with Graco. Ex. 14, Mathur Reply Expert Rep. ¶¶ 34– 35.  Indeed, those three companies collectively account for less than ▮▮ percent of the spray foam gun market and therefore have not gained sufficient footing in the market so as to meaningfully constrain Graco.  *Id.* ¶ 35; Ex. 16, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The entirety of Dr. Maness's opinion that Graco's patents do not form a barrier to entry accordingly fails.

Oct. 20, 2015) (excluding class certification expert opinions that conflict with the court's prior rulings and existing law as "*per se* unreliable and inadmissible under *Daubert*"); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 370–71 (D. Del. July 19, 2021) (excluding expert opinion relating to patent infringement "to the extent it relies on an incorrect legal standard").

In her report, Dr. Mathur opined that North America was the relevant geographic market for Carlisle's *Walker Process* claims.  Ex. 3, D. Mathur Expert Rep. ¶¶ 76–78.  Dr. Maness disagreed, contending that the geographic market cannot be North America for the sole reason that this case involves the assertion of a U.S. patent and thus (according to Dr. Maness's understanding) any sales of spray foam guns outside the U.S. "would not be implicated by the alleged anticompetitive conduct."  Ex. 1, R. Maness Expert Rep. ¶ 47.  But an antitrust geographic market is defined by consumer behavior—an analysis that Dr. Maness failed to undertake—not by the territorial bounds of a patent.  Because he did not apply the relevant test, Dr. Maness cannot reliably opine about the scope of the relevant geographic market.

The geographic market for an antitrust claim is "the area in which a potential buyer may rationally look for the goods or services he or she seeks."  *Transweb*, 812 F.3d at 1308; *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 726 (3d Cir. 1991) ("Consequently, the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product.").

Fighting the law, Dr. Maness claims the geographic market in this case should instead be limited to the territorial reach of the patent, and thus cannot be the whole of North America.  Ex. 1, R. Maness Expert Rep. ¶ 47.  That is because, in Dr. Maness's view, Carlisle's antitrust claims are predicated upon Graco's fraudulent procurement of a U.S. patent, which implicates anticompetitive conduct that "can't impact Canada," and "can't impact outside the US in this case."

11

Ex. 2, R. Maness Dep. Tr. at 259:22–260:10.  Dr. Maness insisted that because "patent claims are country specific, [] that has an impact on relevant markets."  *Id.* at 271:13–21.  His resort to the territorial bounds of the '172 Patent—rather than consumer behavior—ignores the governing standard to define an antitrust geographic market.  Ex. 1, R. Maness Expert Rep. ¶ 47.  Indeed, Dr. Maness explicitly disagreed with the relevant legal tests:

- He disagreed with the *TransWeb* standard that "[t]he geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks." Ex. 2, R. Maness Dep. Tr. at 259:6–9 ("I don't agree with that.").

- He disagreed that a geographic market is based on where **consumers** look for suppliers of a product.  *Id.* at 286:10–13 (Q: "[I]t depends on where their consumers are coming from but not what the nature of Graco's patent claims in this case are, right?  A: I disagree with that.").

- He could not recall a single antitrust case where he opined, as he does here, that the geographic market definition should account for something other than cross-elasticity demand of a geographic area.  *Id.* at 269:1–5.

Even beyond contradicting governing law the jury must apply, Dr. Maness's geographic market opinion suffers from other critical defects.  For instance, he could not point to any economic literature that supports his conjecture that a geographic market is defined in terms of patent claims. *Id.* at 271:13–21 ("I can't point you to anything."); *see Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322 (3d Cir. 2003) (affirming exclusion of expert testimony as "speculative and unreliable" where there was "no literature confirming [the expert's] theory").  He also ignores key facts that contradict his assertion that a North American "geographic market is not consistent with the allegations in this case." Ex. 1, Maness Expert Rep. ¶ 47.  As one example, Graco sent a letter to all its distributors, including Canadian distributors, threatening litigation if those distributors sold or offered to sell Carlisle's ST1 gun.  Ex. 5, Feb. 25, 2021 Letter (GRACO_0077687); Ex. 2, R. Maness Dep. Tr. at 276:20–22.  Not only did the letter mention Graco's lawsuit against Carlisle, but it also expressly references a suit filed in Canada against a Canadian reseller.  *Id.*  Just one

month later, Graco ███████████████████████████████████████████████████

███████, Ex. 17, 2021 Spray Foam Forum Watch Mailing List (GRACO_0275949) at -

275950— ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████ Ex. 6, Mar. 31, 2021 Letter (GRACO_0883778) at -

883778. Dr. Maness acknowledges ████████████████████████████████

██████████████████████████████████. Ex. 2, R. Maness Dep. Tr. at

280:20–281:1, 284:9–15.   Dr. Maness's sole explanation is his unsupported speculation that

Canadian distributors could determine that they are ***not*** at risk of being sued by Graco for patent

infringement—despite Graco's letters to the contrary—if they retained outside counsel to analyze

Graco's claims. *See, e.g.*, *id.* at 278:17–21, 281:9–16, 282:3–7.[5]  But that has ***no*** bearing on the

geographic market because it has no relevance to "the area in which a potential buyer may

rationally look for the goods or services he or she seeks." *Transweb*, 812 F.3d at 1308.

Indeed, Dr. Maness minimizes the facts that actually do bear on the area in which

consumers look for spray foam guns.  For instance, each of the ██████████████ that

received Graco's March 2021 letter maintains a Canadian location right over the United States

border.  As one example, the distributor ███████████ maintains a Canadian location just ██

miles from the United States border crossing:

---

[5] Dr. Maness's position on this point is also irreconcilable with his own testimony.  While claiming that Canadian distributors would hire lawyers to pressure test Graco's threats of litigation for carrying Carlisle's products, Dr. Maness simultaneously acknowledges that distributors would not "get involved in serious litigation with Graco because the cost to them would be high, and so Graco would have leverage in settlement negotiations." Ex. 2, R. Maness Dep. Tr. at 158:4–10.



Ex. 18, Maness Dep. Ex. 257.  Yet, Dr. Maness could not point to any economic reason why United States contractors would not travel a mere ▮ miles across the Canadian border to purchase products at ▮▮▮▮—rather than traveling hours to distributors in Seattle.  Ex. 2, R. Maness Dep. Tr. at 269:21–271:21.  Dr. Maness's opinion that the relevant geographic market cannot be North America ignores these facts and the commercial realities of the market.  *See, e.g.*, *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 54 (2d Cir. 2016) (affirming grant of motion to dismiss for failure to plead a relevant geographic market and noting that "[c]onveniently for the plaintiffs, this proposed market definition excludes gambling markets in Connecticut, Pennsylvania, and New Jersey that are well-known and accessible to residents of the NY Metro area"); *Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37 (1962) (stating that the geographic market must "correspond to the commercial realities of the industry").

Dr. Maness's misapplication of the law surrounding geographic market definitions for antitrust claims renders his geographic market opinions unreliable, unhelpful to the trier of fact, and inadmissible.

14

### C.    Dr. Maness's Opinion That Graco's Market Power Came From Anything Other Than The '172 Patent Is Unreliable And Not Supported By Evidence.

Dr. Maness's opinion that Graco's market power stemmed from sources other than the '172 Patent should be excluded because it is unreliable and lacks evidentiary support.  "[E]xpert testimony based on assumptions lacking factual foundation in the record is properly excluded." *Meadows*, 306 F. App'x at 790 (excluding expert testimony because it "did not fit with the otherwise uncontroverted evidence before the Court").  "[W]hen an expert's opinion is not sufficiently supported with evidence or when indisputable facts contradict or otherwise render the expert's opinion unreasonable, the expert's testimony is not admissible." *Branch v. Temple Univ.*, 2021 WL 2823071, at *2 (E.D. Pa. July 7, 2021).

Here, Dr. Maness asserts that Graco's market power results from "factors that are entirely legitimate and not anticompetitive, such as superior product, business acumen, customer relationships, and marketing"—without citing *any* evidence.  Ex. 1, R. Maness Expert Rep. ¶ 55; Ex. 2, Maness Dep. Tr. at 356:14–357:4 ("I don't cite anything in that paragraph, I agree.").  He could not point to a single paragraph in his report that contained facts supporting this opinion, despite being given multiple chances to do so.  Ex. 2, R. Maness Dep. Tr. at 358:6–360:2.  Dr. Maness's failure to marshal a single piece of evidence to support his opinion that Graco's market power resulted from sources other than the '172 Patent renders that opinion unreliable and requires exclusion of the opinions described in Paragraph 55 of his report.

## <u>CONCLUSION</u>

The Court should partially exclude Dr. Maness's opinions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morssicnishols.com
araucci@morrisnichols.com

Gregg F. LoCascio, P.C.
Matthew S. Owen, P.C.
Nathan S. Mammen
Nichole DeJulio
Karthik Ravishankar
Meredith Pohl
Cole T. Tipton
Mary-Kathryn Hawes
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Alexandria Ray
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

*Attorneys for Defendant Carlisle Construction Materials, LLC*

June 21, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.  I further certify that I caused copies of the foregoing document to be served on June 21, 2024, upon the following in the manner indicated:

Pilar G. Kraman, Esquire                                                          *VIA ELECTRONIC MAIL*
Colin A. Keith, Esquire
Jennifer P. Siew, Esquire
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 N. King St.
Wilmington, DE 19801
(302) 571-6600
*Attorneys for Plaintiffs*

M. Sean Royall                                                                       *VIA ELECTRONIC MAIL*
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 626-2994

                                                                                     *VIA ELECTRONIC MAIL*
Emily S. Newton
King & Spalding LLP
1180 Peachtree Street, N.E.
Suite 1600
Atlanta, GA 30309
(404) 572-2745

                                                                                     *VIA ELECTRONIC MAIL*
Brent P. Ray
King & Spalding LLP
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
(312) 764-6925
*Attorneys for Plaintiffs*


                                                              */s/ Anthony D. Raucci*
                                              _____
                                                 Anthony D. Raucci (#5948)