IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GRACO INC. and<br>GRACO MINNESOTA INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>CARLISLE CONSTRUCTION<br>MATERIALS, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C. A. No. 21-245 (JLH) (SRF)<br><br>■■■■■■■<br><br>REDACTED - PUBLIC VERSION |
| CARLISLE CONSTRUCTION MATERIALS,<br>LLC, and CARLISLE COMPANIES, INC.,<br><br>    Counterclaim Plaintiffs,<br><br>v.<br><br>GRACO INC. and<br>GRACO MINNESOTA INC.,<br><br>    Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

**CARLISLE'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT ON CARLISLE'S ANTITRUST COUNTERCLAIMS**

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................. 1

**BACKGROUND** ................................................................................................................... 1

**LEGAL STANDARD** ........................................................................................................... 3

**ARGUMENT** ......................................................................................................................... 4

**I.** **A RELEVANT PRODUCT MARKET FOR CARLISLE'S *WALKER PROCESS* CLAIMS IS SPRAY FOAM GUNS.** ............................................... 4

    A.    A Relevant Product Market Under The Sherman Act Is The Set Of Products That Are Reasonably Interchangeable By Consumers For The Same Purpose. ................................................................................................ 4

    B.    A Relevant Product Market For Carlisle's *Walker Process* Claims Is Spray Foam Guns. .................................................................................................... 5

        1.    Graco's witnesses do not dispute that there are no reasonably interchangeable substitutes for spray foam guns. ....................................... 6

        2.    The evidence concerning elasticity of demand confirms that spray foam guns are a relevant product market. ................................................... 7

**CONCLUSION** ...................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen-Myland v. Int'l Bus. Machs. Corp.*,
   33 F.3d 194 (3d Cir. 1994)......................................................................................4, 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................3, 4

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962)................................................................................................4, 5

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   2022 WL 13866999 (S.D.N.Y. Oct. 21, 2022)...........................................................2

*FTC v. Hackensack Meridian Health, Inc.*,
   30 F.4th 160 (3d Cir. 2022) .......................................................................................3

*FTC v. Penn State Hershey Med. Ctr.*,
   838 F.3d 327 (3d Cir. 2016).......................................................................................8

*Grason Elec. Co. v. Sacramento Mun. Util. Dist.*,
   571 F. Supp. 1504 (E.D. Cal. 1983)...........................................................................5

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997).......................................................................................7

*Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*,
   305 F.3d 1124 (10th Cir. 2002) .................................................................................5

*TransWeb, LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016)..................................................................................3

*United Food & Com. Workers Loc. 1776 v. Teikoku Pharma USA*,
   296 F. Supp. 3d 1142 (N.D. Cal. 2017) ..................................................................5, 9

*United States v. E. I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956)...................................................................................................4

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966).........................................................................................3, 4, 7

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965)...................................................................................................2

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    2021 WL 6689718, at *20 (E.D. Va. Nov. 1, 2021) ............................................................. 5, 9

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 3

# INTRODUCTION

Graco is a monopolist that has unlawfully dominated the spray foam gun market for more than a decade.¹ Using a fraudulently obtained patent and threats of litigation against distributors to exclude or attempt to exclude competitors like Carlisle, Graco has maintained its North American monopoly in the spray foam gun market, or at least attempted to do so, in violation of Section 2 of the Sherman Act.

Carlisle now moves for partial summary judgment on its antitrust counterclaims because there is no dispute of material fact over a relevant product market at issue. Indeed, the facts of this case—including the testimony of both former and current Graco employees—demonstrate that there are no reasonably interchangeable substitutes for spray foam guns. The expert testimony adduced by the parties confirms that; the economic analysis of Carlisle's antitrust expert, Dr. Divya Mathur, stands unrebutted on this point. It is in this market—plural component spray foam guns capable of spraying fast-setting chemicals—that Graco has unlawfully wielded its power to maintain a market share near or above ▮ (a market share that Graco has adduced no evidence to contradict). *See* Carlisle's Statement of Facts in Supp. of Its Antitrust Mot. for Summ. J. ("SOF") ¶ 38. Carlisle is accordingly entitled to judgment as a matter of law that spray foam guns are a relevant product market.²

# BACKGROUND

Graco initiated this lawsuit in February 2021, alleging that Carlisle's ST1 spray foam gun infringed Graco's U.S. Patent No. 7,527,172 ("the '172 Patent"). D.I. 1. Carlisle then filed counterclaims for monopolization and attempted monopolization under Section 2 of the Sherman

---

¹ As used herein, "spray foam gun" refers to plural component spray foam guns capable of spraying fast-setting chemicals.

² Carlisle is simultaneously moving for summary judgment on Graco's failure to prove its patent infringement claim. *See* Carlisle's Mot. for Summ. J. of No Infringement.

1

Act because Graco monopolized or attempted to monopolize the North American markets for fast set equipment ("FSE") and spray foam guns, including through its fraudulent procurement and subsequent enforcement of the '172 Patent against Carlisle to exclude competition. 15 U.S.C. § 2; *see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965); D.I. 148 ¶¶ 85–110.

This case centers on FSE, which is used to spray fast setting polyurethane foam insulation and protective coatings in residential and commercial construction. SOF ¶¶ 3–4. It is called "fast set" because the chemicals that mix together to form the foam or coating harden and "set" very quickly—sometimes within a matter of seconds. SOF ¶ 5. FSE includes proportioners, which determine the proper ratio of chemicals to dispense; heated hoses, which take the chemicals dispensed by the proportioner and heat them to a temperature at which they will be reactive; and spray foam guns, which dispense spray foam onto walls and roofs that quickly sets to form a hard layer of insulation. SOF ¶¶ 6–10. The vast majority of FSE is used by the end users (contractors) to spray foam insulation inside walls and roofs in new construction. SOF ¶¶ 11–12.

Critically, contractors must use spray foam guns in order to spray fast setting foam insulation. SOF ¶¶ 14–20. Because the chemicals used with FSE set within a matter of seconds, spray foam guns are unique in allowing the chemicals to mix at the tip of the gun, just before they are sprayed onto a surface. SOF ¶¶ 5, 10, 19. Therefore, contractors cannot spray polyurethane foam on a surface without a spray foam gun. SOF ¶¶ 14–20.

In support of its antitrust claims, Carlisle disclosed Dr. Divya Mathur, an antitrust economic expert who (among other things) opined on Carlisle's proposed product market definition. SOF ¶¶ 21–22. Dr. Mathur is a professional economist whose antitrust opinions have been accepted by courts around the country. SOF ¶ 21; *e.g.*, *In re Foreign Exch. Benchmark Rates*

2

*Antitrust Litig.*, 2022 WL 13866999, at *2 (S.D.N.Y. Oct. 21, 2022) (denying motion to exclude Dr. Mathur's expert testimony). Using the hypothetical monopolist test, Dr. Mathur opined that a relevant product market was spray foam guns. SOF ¶¶ 22–30. In opposition, Graco disclosed Dr. Robert Maness as its rebuttal antitrust expert. *E.g.*, SOF ¶ 31. While Dr. Maness had an opportunity to rebut Dr. Mathur's conclusions in both his rebuttal report and then weeks later at deposition, he did not propose any alternative product market, nor did he provide any independent elasticity analysis or calculations establishing that Dr. Mathur's proposed spray foam guns product market did not account for any products or the commercial realities of the spray foam industry. SOF ¶¶ 31–32, 34, 37.

## **LEGAL STANDARD**

A *Walker Process* plaintiff must prove "that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement," plus the elements of a Section 2 claim. *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016). A Section 2 claim "has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). "The relevant market includes both a product market and a geographic market." *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 166 (3d Cir. 2022) (citation omitted).

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

## ARGUMENT

**I.   A RELEVANT PRODUCT MARKET FOR CARLISLE'S *WALKER PROCESS* CLAIMS IS SPRAY FOAM GUNS.**

There is no genuine dispute that a relevant product market in this case is spray foam guns. It is undisputed that there are no products that are reasonably interchangeable with spray foam guns for use by spray foam contractors, and the expert evidence relating to cross-elasticity of demand only confirms that spray foam guns are a relevant product market.

**A.   A Relevant Product Market Under The Sherman Act Is The Set Of Products That Are Reasonably Interchangeable By Consumers For The Same Purpose.**

To define the relevant product market, courts look at "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). In particular, the relevant product market includes "commodities reasonably interchangeable by consumers for the same purposes," *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956), so long as "that combination reflects commercial realities." *Grinnell*, 384 U.S. at 572. "'Interchangeability' implies that one product is roughly equivalent to another for the use to which it is put; while there might be some degree of preference for the one over the other, either would work effectively." *Allen-Myland v. Int'l Bus. Machs. Corp.*, 33 F.3d 194, 206 (3d Cir. 1994). "The key test for determining whether one product is a substitute for another is whether there is a cross-elasticity of demand between them: in other words, whether the demand for the second good would respond to changes in the price of the first." *Id.* For example, whether Pepsi is interchangeable with Coke and considered part of the same

4

product market depends on whether enough consumers would switch from Coke to Pepsi in response to a price increase to Coke such that Coke's price increase would not be profitable. There may be more than one relevant market in a given case, such as "well-defined submarkets" that exist within a broader market. *Brown Shoe Co.*, 370 U.S. at 325.

While market definition is typically a factual question reserved for the trier of fact, it is appropriate to grant an antitrust plaintiff's motion for summary judgment on market definition when there are no genuine issues of disputed fact. *Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1136 (10th Cir. 2002) (affirming grant of plaintiff's partial summary judgment motion on product market definition); *United Food & Com. Workers Loc. 1776 v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1175–76 (N.D. Cal. 2017) (granting plaintiff's motion for partial summary judgment on market definition "based on undisputed facts and total lack of evidence" put forth by defendant on cross-elasticity of therapeutically equivalent products); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 6689718, at *20 (E.D. Va. Nov. 1, 2021), *report & recommendation adopted by*, 587 F. Supp. 3d 356, 363 (E.D. Va. 2022) (granting antitrust plaintiff's motion for partial summary judgment and adopting plaintiff's market definition where there was "really never any controversy" about the relevant product market), *motion to certify appeal denied by* 2022 WL 1559092 (E.D. Va. Apr. 29, 2022); *Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 571 F. Supp. 1504, 1521–23 (E.D. Cal. 1983) (deciding relevant market for Section 2 claims on summary judgment in accordance with plaintiff's proposed market).

**B.    A Relevant Product Market For Carlisle's *Walker Process* Claims Is Spray Foam Guns.**

In this case, there is no genuine dispute of material fact that spray foam guns are a relevant product market. First, the undisputed facts of this case—including the deposition testimony of Graco's own witnesses—establish that there are no reasonably interchangeable substitutes for

spray foam guns because contractors cannot spray fast-setting foam insulation without a gun. Second, the expert evidence from Dr. Mathur and Dr. Maness confirm that spray foam guns are a relevant market. Carlisle's motion for partial summary judgment should be granted.

        1.    <u>Graco's witnesses do not dispute that there are no reasonably interchangeable substitutes for spray foam guns.</u>

There is no genuine dispute that a relevant product market in this case is spray foam guns because those guns have no reasonably interchangeable substitutes. Spray foam guns are indispensable to spray foam insulation. SOF ¶¶ 10–11, 14–20. That is because the chemicals used to form spray foam insulation harden within a matter of seconds, and spray foam guns are the only product that can mix the chemicals at the tip of the gun and then spray the insulation before it solidifies. SOF ¶¶ 5, 10, 19.

Here, Graco's own fact witnesses agree that no other products are reasonably interchangeable with spray foam guns because contractors *cannot* spray fast-setting foam insulation without a spray foam gun. This is undisputed. [redacted]

6



. Given that ***no other*** product can spray foam insulation besides a spray foam gun, the "commercial realities" faced by consumers establish that spray foam guns is a relevant product market. *See Grinnell*, 384 U.S. at 572 (noting that the product market must "reflect[] commercial realities").

        2.      <u>The evidence concerning elasticity of demand confirms that spray foam guns are a relevant product market.</u>

Expert testimony concerning elasticity of demand confirms that a relevant product market is spray foam guns. Cross-elasticity measures "the substitutability of products from the point of view of ***buyers***." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437–38 n.6 (3d Cir. 1997) (emphasis added). One accepted method for analyzing the cross-elasticity between products included and excluded from a proposed market is to apply the hypothetical monopolist test, which finds that a market is properly defined if a hypothetical monopolist could profitably impose a small but significant non-transitory increase in price ("SSNIP") above the competitive

7

price in the proposed market. *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 338 (3d Cir. 2016). If "consumers would respond to a SSNIP by purchasing the product from outside the proposed market, thereby making the SSNIP unprofitable, the proposed market definition is too narrow." *Id.*

Here, the economic evidence only confirms the commercial reality that there are no substitutes for spray foam guns. Applying the hypothetical monopolist test, Dr. Mathur opined that spray foam guns form a relevant product market because a 5% increase in the cost of spray foam guns would represent less than a 0.1% increase in the annual cost of operating a spray foam system overall. SOF ¶ 24. Dr. Mathur determined that when faced with the choice of increasing annual costs by less than 0.1%, using less spray foam, or leaving the market entirely because of a refusal to buy guns, enough contractors would pay the higher price. SOF ¶¶ 23, 25–29. Therefore, the hypothetical monopolist could "profitably impose a SSNIP." SOF ¶ 29. Accordingly, Dr. Mathur concluded that spray foam guns constitute a relevant antitrust market. SOF ¶ 30.

Graco's antitrust expert, Dr. Maness, provides no economic evidence to rebut Dr. Mathur's SSNIP analysis. Indeed, Dr. Maness does not provide an alternative product market, disclose elasticity calculations showing how any of his opinions would bear on Dr. Mathur's SSNIP analysis, or conduct an SSNIP analysis himself. SOF ¶¶ 31–34, 37. Instead, Dr. Maness largely criticizes Dr. Mathur for purportedly ignoring the possibility that, in lieu of paying a hypothetical monopolist's higher prices for spray foam guns, contractors might try to "extend the life of their existing guns through refurbishment or enhanced maintenance." SOF ¶ 33. But that criticism is "akin to saying that installing new brakes may delay the necessity of purchasing a new car, but it is not sufficient evidence on which to conclude that the products are reasonably interchangeable in use." *Allen-Myland*, 33 F.3d at 207 (affirming rejection of antitrust defendant's argument that

8

products used to prolong primary product's useful life should be included in the relevant market when it was implausible that those products could effectively constrain hypothetical monopolist). Dr. Maness performed no analysis to determine whether it was plausible that spare parts could effectively constrain a hypothetical spray foam gun monopolist. SOF ¶¶ 34, 37.[3] Simply labeling Dr. Mathur's SSNIP analysis as "'flawed' is not the same as demonstrating it." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 6689718, at *15. With no evidence demonstrating how Dr. Maness's critiques impacted Dr. Mathur's SSNIP analysis, his "criticisms are based on perception, not proven contradiction" and fail to create a dispute of material fact. *Id.* at *15–16 (granting plaintiff's motion for partial summary judgment on market definition); *see also United Food & Com. Workers Loc. 1776*, 296 F. Supp. 3d at 1175–76 (granting plaintiff's motion for partial summary judgment on relevant antitrust market because there was no genuine dispute on cross-elasticity of demand).

Given that both the fact and expert evidence undisputedly prove that a relevant product market is spray foam guns, this Court should grant Carlisle's motion for partial summary judgment on product market definition.

## CONCLUSION

The Court should grant Carlisle's Motion for Partial Summary Judgment on Its Antitrust Counterclaims.

---

[3] Indeed, Dr. Mathur's Reply Report demonstrated why it is "highly unlikely" that substitution to repairs and maintenance could defeat the SSNIP. SOF ¶¶ 35–36.

<table>
<tr><td>

OF COUNSEL:

Gregg F. LoCascio, P.C.
Nathan S. Mammen
Matthew S. Owen, P.C.
Nichole DeJulio
Karthik Ravishankar
Cole T. Tipton
Meredith Pohl
Mary-Kathryn Hawes
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 389-5000

Alexandria Ray
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
(415) 439-1400

June 21, 2024

</td><td>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Carlisle Construction Materials, LLC and Carlisle Companies, Inc.*

</td></tr>
</table>

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 21, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Pilar G. Kraman, Esquire<br>Colin A. Keith, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| M. Sean Royall, Esquire<br>KING & SPALDING LLP<br>1700 Pennsylvania Avenue, N.W., Suite 900<br>Washington, D.C. 20006<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Emily S. Newton, Esquire<br>KING & SPALDING LLP<br>1180 Peachtree Street, NE, Suite 1600<br>Atlanta, GA 30309<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Brent P. Ray, Esquire<br>KING & SPALDING LLP<br>110 N. Wacker Drive, Suite 3800<br>Chicago, IL 60606<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Anthony D. Raucci*

Anthony D. Raucci (#5948)