**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **GRACO INC., GRACO MINNESOTA INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-245** |
| | : | |
| **CARLISLE CONSTRUCTION MATERIALS, LLC** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                    **October 7, 2024**

This case involves the infringement of U.S. patent no. 7,527,172 and several counterclaims, including invalidity of the 172 patent, inequitable conduct, and *Walker Process* antitrust claims.  The technology is foam insulation spray guns, which both Carlisle and Graco make and sell.  We recently denied several dispositive motions related to the *Walker Process* claims.  DI 456-57.  That brings us to two patent-related motions: Carlisle's motion for summary judgment of no infringement (DI 329), and Graco's motion for partial summary judgment and supplemental claim construction (DI 335).  Both are mostly denied, but granted in part, and the case remains set for trial on December 2, 2024.

Carlisle's motion argues that there is no infringement as a matter of law because claims 1 and 10 of the 172 patent require admission passages tangent to the cylindrical sidewall of the spray gun's mixing chamber, and the accused ST1 spray gun's passages are not tangent.  Graco concedes that proving literal infringement is "functionally implausible" under the established construction of "tangent," but argues that the ST1 gun infringes under the doctrine of equivalents because the admission passages are offset from tangent by a negligible distance.  DI 378 at 1-2.  Graco asserts that a jury could find equivalence based on the evidence and expert testimony it has proffered.  *Id.*  Graco further argues that even though "tangent" was added by amendment,

prosecution history estoppel does not foreclose equivalents because the reason for the amendment that swept in the tangent limitation bore only "a tangential relation to the equivalent in question."[1]  *Id.* (quoting *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019)).

Graco's motion asks us to construe the claim term "two parts" in claim 1 (and, equivalently, "two-part" in claim 10).  DI 338 at 1-2.  Claim construction is in the rear-view mirror in this case, but *O2 Micro* and a spirit of determination among lawyers tend to make objects closer than they may appear.  *Id.* (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)).  Graco proposes the construction "two separate pieces" and argues that if we agree, then the claims will exclude the prior art Probler 1 drawings as a matter of law.  And if Probler 1 is out, so goes Carlisle's inequitable conduct and *Walker Process* claims because they require the materiality of Probler 1.  *Id.* (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011)).  Graco asks us to construe "two parts" under both the *Phillips* and the broadest reasonable interpretation (BRI) standards because the *Phillips* construction is relevant to validity and infringement, while the BRI standard is relevant to the inequitable conduct and *Walker Process* claims.  Graco argues that its construction "two separate pieces" is appropriate under both *Phillips* and BRI.  *Id.*

Carlisle responds that Graco has failed to demonstrate a claim construction dispute that warrants a construction of "two parts."  DI 372 at 6-9.  Carlisle also argues that Graco's proposed claim construction is an attempt to inject the requirement that the "two parts" be

---

[1] Yes, we will be analyzing the "tangential-relation" exception for the claim term "tangent."  Patent law truly delivers.

separable after assembly (i.e., not just "separate" but "separable"), and that if we do construe "two parts" under *Phillips*, the construction should at most be "formed from two or more pieces of material." *Id.* at 9-13.  Carlisle argues further that Graco's proposed construction does not yield summary judgment on the inequitable conduct and antitrust claims because, among other reasons, the Probler 1 drawings would be material to patentability under 35 U.S.C. § 103, if not 35 U.S.C. § 102.  *Id.* at 17-19.

For the reasons discussed in more detail below, both motions are **GRANTED IN PART**. We grant summary judgment of no literal infringement but deny summary judgment of no infringement by equivalents.  We construe the claim term "two parts" to mean "two separate pieces," but we deny summary judgment on the inequitable conduct and antitrust claims.  The analysis below will first address the issues surrounding infringement by equivalents, then address the claim construction of "two parts," and lastly address whether summary judgment is appropriate for the inequitable conduct and antitrust claims.

## I.   Legal Standard

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and "[w]e view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (internal quotations omitted).

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."  *O2 Micro*, 521 F.3d at 1362.  We "may engage in claim

construction during various phases of litigation, not just in a *Markman* order." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).

## II.  Analysis

### A.  There is no literal infringement as a matter of law but equivalents will pass to the jury.

The parties agree that Carlisle's ST1 spray gun does not literally infringe any claim in the 172 patent. DI 330 at 4-5; DI 378 at 1.  Because there are no asserted disputes of material facts regarding literal infringement, we will grant summary judgment on this claim for Carlisle.  The parties disagree about whether a dispute of material fact exists related to Graco's claim of infringement under the doctrine of equivalents.

#### i.  The tangential-relation exception to prosecution history estoppel applies here.

A patent owner may rely upon the doctrine of equivalents to encompass "insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).  Prosecution history estoppel prevents a patent owner from recapturing through equivalents claim scope surrendered during the prosecution of a patent.  "Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope" and that amendment was made for a "substantial reason related to patentability." *Id.* at 735-36.

A narrowing amendment made to secure the patent gives rise to a presumption of estoppel, but that presumption can be rebutted if: "(1) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; (2) the equivalent was unforeseeable at the time of the application; or (3) there was some other reason suggesting that the patentee could not reasonably be expected to have described the equivalent." *Bio-Rad*

4

*Labs.,*[2] *Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1364 (Fed. Cir. 2020) (citing *Festo*, 535 U.S. at 740-41); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997) (holding that a patent owner must "establish the reason for an amendment" and the court must then decide "whether that reason is sufficient to overcome prosecution history estoppel as a bar to application of the doctrine of equivalents to the element" in the amendment"). *Warner-Jenkinson* does not require a patent owner to provide a reason for each specific limitation in an amendment to overcome the presumption of prosecution history estoppel. Rather, it requires that the patent owner provide "the reason for an amendment," meaning, the amendment as a whole. "[T]he specifics of the amendment and the rejection that provoked the amendment . . . determine whether estoppel precludes the particular doctrine of equivalents argument being made." *Bio-Rad*, 967 F.3d at 1364 (quoting *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010)). This determination is a question of law and the patentee "bear[s] the burden of showing that the amendment does not surrender the particular equivalent in question." *Festo*, 535 U.S. at 740; *Bio-Rad*, 967 F.3d at 1364.

The parties agree that the "tangent" limitation came in through a narrowing amendment that distinguished the claims from a prior art reference known as Crispell. DI 330 at 6-7; DI 378 at 3. It is therefore undisputed that the *Warner-Jenkinson/Festo* presumption of complete surrender applies. Carlisle argues that this should end our inquiry. DI 405 at 2 (citing DI 331 ¶¶ 14-17). But Graco responds that the reason for the amendment did not concern near-tangent admission passages — the equivalent asserted here — and therefore the tangential-relation

---

[2] Yes, I am aware. And no, I will not.

exception applies.  We agree with Graco and find that the 172 patent's prosecution history does not foreclose Graco's proposed doctrine of equivalents arguments.

To back up a bit, Graco added limitations to claim 1 on December 15, 2008 after the prior office action had rejected claims 1-19 of the application[3] as obvious over Sinders in view of Crispell.  DI 332, Ex. 10 at 188 (ECF).  The new limitations required, among other things, that the admission passages be "tangent to the cylindrical sidewall of the mixing chamber at its intersection with the cylindrical sidewall of the mixing chamber."  *Id.* at 201 (ECF).  The examiner's rejection followed from the examiner's assertion that "Crispell teaches . . . admission passages 5, 6 that are tangent with the walls of the mixing chamber 3 . . . ."  *Id.* at 189 (ECF).  The relevant figure from Crispell is reproduced below with red circles added that highlight elements 5 and 6:



Graco disagreed in its response, stating that "Crispell discloses . . . 'the inner end of nozzle 1 forms <u>a conic depression, as shown at 5,</u>'" and "<u>a flaring passage 6</u> formed between the two conical walls."  *Id.* at 218 (ECF).  Graco's response included the underlining above, which tends to show that it did not believe that elements 5 and 6 of the figure identified by the examiner

---

[3] It was application no. 11/547,460.

were admission passages at all, but rather were a conic depression and flaring passage, respectively.  More importantly, Graco did not discuss near-tangent admission passages and did not rely on arguments that distinguished any orientation of admission passages.  In the next office action, which allowed the claims, the examiner agreed with Graco that elements 5 and 6 were not admission passages; identified elements 8 and 9 as admission passages; and stated that elements 8 and 9 were "not tangent to either of the mixing chambers."  *Id.* at 236-37 (ECF).

The prosecution history unambiguously demonstrates that the reason for the amendment at issue was not to distinguish near-tangent or other admission-passage orientations from the claimed invention in the 172 patent.  Graco cancelled then-claim 2 and added the limitations of claim 2 into claim 1, which included the tangent limitation among others.  The record reflects that Graco's reason for amending was that the examiner had not identified any admission passages in Crispell, and therefore the claims were not obvious in view of Sinders and Crispell.  There is little doubt that the incorporation of claim 2's limitations into claim 1 was intended to clarify the distinction between the claims and Crispell, not to distinguish non-tangent admission passages.  According to the examiner, Sinders and Crispell both disclosed tangent admission passages, therefore no other admission passage orientation was relevant to the amendment.

Considering the prosecution history as a whole, the reason for Graco's amendment bears only a "tangential relation" to the equivalent at issue — near-tangent admission passages.[4]  *See*

---

[4] Carlisle points out that Graco filed a declaration "highlighting the importance of having fluid enter the mix chamber tangent to its walls to impart a rapid whirling motion."  DI 405 at 4 (citing DI 406-1 at 3).  The relevant portions of the declaration only reinforce our conclusion.  As with the response, the declaration primarily distinguishes Crispell based on the inaccurate identification of elements 5 and 6 as admission passages.  DI 406-1 at 3-4.  While the declaration does note that the liquid materials in the invention "must be injected into the mixing chamber . . .

*Bio-Rad*, 967 F.3d at 1366 ("The question here is not whether Quake disclosed fluorinated microchannels, but rather, whether Quake taught the use of non-reactive amounts of fluorination in the microchannels.  It did not.  Accordingly, the narrowing amendment can only be said to have a tangential relation ***to the equivalent at issue*** — negligibly fluorinated microchannels, or, put differently, microchannels with non-fluorinated properties." (emphasis added)).  Therefore, Graco has rebutted the presumption of complete surrender as to its equivalents theory for "tangent."  *Id.* at 1364.

### ii.    There is no "claim vitiation" here.

Summary judgment is appropriate if a proposed equivalent "would entirely vitiate a particular claim element."  *Warner-Jenkinson*, 520 U.S. at 39 n.8.  Claim vitiation is "a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted."  *Bio-Rad*, 967 F.3d at 1367 (quoting *UCB, Inc. v. Watson Labs., Inc.*, 927 F.3d 1272, 1283 (Fed. Cir. 2019)).  "[S]aying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests."  *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).  Vitiation — often invoked reflexively for any difference between the claim and the accused equivalent — is most applicable when a proposed equivalent in the accused device is the "polar opposite[]" of the original element, as those "two elements likely are not insubstantially different."  *Id.*

Carlisle argues that near-tangent admission passages would vitiate the tangent limitation

---

tangent to its walls," the declaration does not purport to distinguish prior-art near-tangent admission passages from the tangent passages in the invention.  *Id.* at 3, 5.

because Graco's expert opines that offset near-tangent admission passages are equivalent, and offsets are already discussed in other claims of the 172 patent.  DI 330 at 9-10.  Graco counters that Carlisle's broad vitiation argument misses the mark because Graco's expert is not addressing *any* offset, but rather just ST1's near-tangent design.  DI 378 at 5-7.

We agree with Graco that its equivalents theory about Carlisle's near-tangent admission passages in the ST1 spray gun does not vitiate the "tangential" limitation.  Graco's theory, supported by expert opinion, is that the admission passages of the ST1 spray gun are offset by "approximately four thousandths of an inch" and are therefore equivalent to perfectly tangent admission passages.  DI 378 at 5-6.  This theory does not vitiate the tangent limitation.  Plainly, the doctrine of equivalents contemplates situations where the alleged equivalent is very close to, but not quite within, the boundary of the claim.  Sometimes, a seemingly small difference might actually be night-and-day, or so great that no reasonable jury could find it equivalent.  And Carlisle argues that the offsets in the ST1 spray gun are "between 16.8% to 27.5% away from a tangent arrangement," which it says is quite significant.  DI 405 at 5.  But that is Carlisle's version of a fact-intensive dispute — not a basis for summary judgment.  *See Brilliant Instruments*, 707 F.3d at 1347 ("The vitiation test cannot be satisfied merely by noting that the equivalent substitute is outside the claimed limitation's literal scope.").  As noted in the section below, Graco offers an evidence-backed equivalents theory that a jury could agree with.

### iii.    Graco presented a triable issue on function, way, result.

Summary judgment is appropriate regarding the function, way, result test if no reasonable jury could find that the proposed equivalent matches substantially the same function, way, and result of the claim limitation.  To avoid summary judgment, "a patentee must . . . provide

particularized testimony and linking argument . . . with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

Carlisle argues that summary judgment is appropriate because "Graco and its expert have provided only conclusory evidence that the Carlisle ST1's non-tangent admission passages perform the same function, in the same way with the same result as a tangent embodiment." DI 330 at 10-13. Graco responds that it has provided sufficient evidence through its expert Mr. Primeaux that: (i) the function of both the claim limitation and accused element is "to admit plural components to the mixing chamber"; (ii) the way that both accomplish this is by offsetting the admission passages in a way that avoids laminar flow, allowing the "unmixed components [to] smoothly enter the chamber," and by "promot[ing a] swirling motion"; and (iii) both achieve the same result of "production of foam from the mixing chamber of the spray gun." DI 378 at 7-12.

We agree that Graco has presented sufficient evidence to reach the jury on equivalents. Mr. Primeaux provided particularized testimony linking the "function, way, result" of near-tangent admission passages to tangent admission passages. Mr. Primeaux further provided particularized testimony that the function of both tangent and near-tangent admission passages is to mix the plural components, and the result is that the components are mixed into a foam. DI 332, Ex. 6 at ¶¶ 54, 111, 113. Mr. Primeaux also offers particularized testimony that the function and result are achieved in substantially the same way. Mr. Primeaux opines that the inclusion of the offsets in the position of the admission chambers in the ST1, the size of which he calculated

based on Carlisle's engineering drawings, would achieve minimal turbulence and smooth flow in the same way that perfectly tangent admission chambers would. *Id.* at ¶¶ 106-12.

Particularized expert testimony addressing the three-way test is all that is required to survive summary judgment, and Graco has provided that. We ought not assess the merits of his conclusions. Carlisle and its expert may disagree with Mr. Primeaux, but that dispute is for the jury.

### B. We construe "two parts" to mean "two separate pieces."

When the parties raise an actual dispute regarding the scope of a claim term, the court has a duty to resolve it. *O2 Micro*, 521 F.3d at 1360. The court must ensure that it fully resolves any "fundamental dispute regarding the scope of a claim term," even where the parties' disagreement seems to involve whether the term should be construed at all or left to the jury. *Id.* at 1360-61. Moreover, when a claim term is susceptible to different interpretations, and the parties disagree about its meaning, the court must adopt the construction that best aligns with the intrinsic evidence and reflects the meaning that the term would have to one of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

In happier times, the parties ascribed to the phrase "two parts" its plain and ordinary meaning. But, as happens occasionally, the dueling experts (Carlisle's Dr. Rockstraw and Graco's Mr. Primeaux) understood that differently. According to Graco, this situation amounts to a legal dispute over the scope of that term that we must resolve. DI 338 at 9-11.

Graco argues that Mr. Primeaux understands that "two parts" means "two separate pieces," but Carlisle's expert implicitly interprets the plain and ordinary meaning of "two parts" to mean "'an element formed from two identifiable pieces' or something similar." *Id.* at 11.

11

Carlisle responds that *O2 Micro* does not require a claim construction here because the plain and ordinary meaning of the term "is clear from the face of the claim." DI 372 at 6-9. Carlisle argues further that Graco's proposed construction elides Graco's *real* argument, which is that the two parts must be separable after assembly, a further narrowing of mere separateness. According to Carlisle, this "separable-after-assembly" construction is incorrect because "nothing in the specification . . . limits how the two pieces are connected or held together after they are manufactured." *Id.* at 9-13. Carlisle proposes that if we do find that there is a worthy dispute and choose to construe "two parts," the meaning should be "formed from two or more pieces of material." *Id.* at 12-13.

One further dispute to set the stage. Graco argues that we should construe under both the *Phillips* and BRI standards because this case involves infringement, validity, and inequitable conduct claims. Carlisle believes we need construe "two parts" only under *Phillips*, and the BRI need not be resolved when construing claims in an *O2 Micro* context. DI 372 at 17.

Notwithstanding the fog of war obscuring this issue, we agree that there is a live claim construction dispute regarding the meaning of "two parts" that we must resolve under *Phillips* before the jury considers the issues of infringement and invalidity. We also find that because the parties agree that the construction of the "two parts" term is relevant for determining the materiality of the Probler 1 drawings that are central to Carlisle's inequitable conduct and antitrust claims, we will also construe the term under the BRI standard.

This dispute highlights an interesting nuance of claim construction. We are obliged to construe a claim term under the BRI standard, not in connection with review of a Patent Office proceeding, but to aid the jury in resolving factual issues in an antitrust claim. Inequitable

conduct claims are typically reserved for the court. *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009) ("Inequitable conduct is an equitable defense to patent infringement most appropriately reserved for the court."). But Carlisle's inequitable conduct and antitrust claims are both based on the allegedly intentional omission of the same potentially material reference, the Probler 1 drawings. *See Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600-01 (Fed. Cir. 1997) (holding that because an inequitable conduct claim and a *Walker Process* claim shared "substantial commonality," and the jury answered a question asking "whether [the patent owner] knowingly made a misrepresentation or omission to the PTO, whether the misrepresentation or omission was material, and whether [the patent owner] acted with the intention of misleading the PTO," the court was required to adhere to that factual finding). Graco demanded a jury trial, and the jury must decide the factual issues underlying the antitrust claims because those claims are legal in nature. Because — by request of both parties[5] — we will not bifurcate the trial, the jury determination of the materiality of the Probler 1 drawings will constrain our findings on the inequitable conduct claim. *Cabinet Vision*, 129 F.3d at 600-01; *Shum v. Intel Corp.*, 499 F.3d 1272, 1276 (Fed. Cir. 2007) (holding that legal claims should be decided prior to equitable claims when there are common factual issues). The jury's determination must be based on the BRI of "two parts" because the antitrust claims require a finding of inequitable conduct. *See Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1351 (Fed. Cir. 2017) (holding that "the broadest reasonable construction of the claims that the PTO would have applied during prosecution" is used to determine but-for materiality related to inequitable conduct claims);

---

[5] Even if the parties had disagreed, it may have been necessary to try all the issues together under *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). It was unnecessary to resolve that question.

*TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016) (finding that the showing required for proving inequitable conduct is nearly identical to the fraud component of *Walker Process* claims, but *Walker Process* liability requires a higher, more specific showing of 'knowing and willful fraud'"). The construction of "two parts" under any standard is a matter of law, and the parties disagree on the construction of "two parts" under the BRI standard. *In re Baker Hughes Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000) (claim construction under BRI is a "question of law . . . review[ed] de novo"). Putting all those pieces together, the soundest course is to construe "two parts" under BRI to avoid leaving ambiguity for the jury to resolve.

i.   **"Two parts" means "two separate pieces" under *Phillips*.**

For issues of infringement and validity, we apply the standard set forth in *Phillips* to construe claims. Under this standard, claim terms are given their ordinary and customary meaning, which is how a person of ordinary skill in the art would understand them at the time of the invention. *Phillips*, 415 F.3d at 1312-13. Intrinsic evidence, including the claims, the specification, and the prosecution history, primarily governs claim meaning. *Id.* at 1315-16. The specification is often the most important guide, and the claims "must be read in view of the specification, of which they are a part." *Id.* (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)). We may also consult extrinsic evidence, but here, both sides base their arguments entirely on the intrinsic evidence and do not point to any relevant extrinsic evidence.

Graco argues that "two parts" means "two separate pieces." DI 338 at 11-14. Graco points to claims 1 and 10, which describe a two-part mixing chamber as being an assembly of a forward and a rearward part. Graco also identifies drawings in the specification that depict the

forward and rearward parts as separate pieces that are "put together to create the mixing and dispensing element." *Id.* at 12.  The specification explains that two-part construction of the mixing chamber allows for more reliable and consistent manufacturing.  *Id.*

Carlisle responds that Graco's proposed construction improperly limits "two parts" by requiring that the two parts be separable after assembly.  DI 372 at 9-13.  Carlisle claims that the specification provides no limitation on how the two parts are assembled, "connected[,] or held together after they are manufactured."  *Id.* at 10.  According to Carlisle, the only limitation properly derived from the specification is that the pieces be separate prior to manufacturing, and if we must construe "two parts," then we should define it as "formed from two or more pieces of material."  *Id.* at 12-13.  Graco concedes as much in its reply brief, clarifying that its proposed construction "does not depend upon how the parts are connected or held following manufacture," but instead "addresses how the parts exist within the claimed apparatus."  DI 418 at 5.

We agree that the construction "two separate pieces" finds ample support in the specification.  The patent explains that the primary benefits of using a "two-part" mixing chamber are that (i) the discontinuity created by the two parts promotes turbulence within the mixing chamber and (ii) the two parts can be more reliably manufactured because the passages through the forward and rearward part can be created with less "departure of the central axis 23a of the mixing chamber" because the pieces are shorter.  172 patent at 6:6-21.  In the preferred embodiment, the passage along the central axis of the mixing chamber is created by drilling.  *Id.* at 5:14-15 ("[T]he mixing chamber 20 is formed with a cylindrical sidewall, for example, by a drilling operation.").  Shortening the distance drilled reduces the risk of the passage deviating from the central axis.  One of Carlisle's illustrative mock-ups makes the point:

15



'172 Patent, Fig. 4 (modified)

'172 Patent, Fig. 10 (modified)

As both parties acknowledge, the intrinsic evidence does not indicate that the two parts must be assembled in a specific manner in the claimed apparatus of claim 1 or the mixing and spraying element of claim 10. The patent does not limit the two-part assembly to an apparatus with two pieces that can be separated after assembly. We therefore construe "two parts" to mean "two separate pieces," but our construction does not limit how those pieces must be assembled.

### ii.    "Two parts" means "two separate pieces" under BRI

During prosecution of a patent, the patent office interprets claim terms under the BRI standard. "The broadest reasonable construction of a claim term is one that is consistent with 'the specification and the record evidence' and is 'consistent with the one that those skilled in the art would reach.'" *Regeneron*, 864 F.3d at 1351 (quoting *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015)). "In many cases, the claim construction will be the same

16

under the *Phillips* and BRI standards." *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016); *see Facebook, Inc. v. Pragmatus AV, LLC*, 582 F. App'x 864, 869 (Fed. Cir. 2014) ("The broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the Phillips standard.  But it cannot be narrower.").

The parties do not offer any additional arguments regarding the BRI of "two parts" beyond those they used under *Phillips*.  That makes sense because under either standard, the relevant evidence supports the same conclusion.  Based on the same portions of the specification, the BRI of "two parts" requires only that the two parts be an assemblage of two separate pieces, not limited to any particular method of assembly.  Furthermore, the BRI does not require that the two pieces be separate or separable after assembly.

### C.  Inequitable Conduct and Related Antitrust Claims

Finally, Graco argues that if "two parts" means "two separate pieces," as we have held, then summary judgment is appropriate in its favor on Carlisle's inequitable conduct and antitrust claims.  DI 338 at 16-17.  This is because the Probler 1 drawings reflect a mixing chamber that is made from two separate pieces that are soldered together.  Graco reasons that a mixing chamber so assembled cannot be but-for material because the soldered-together pieces are not "two separate pieces."  *Id.* at 3, 16-17 ("[T]he Probler 1 drawings are not material because they only show a unitary mixing chamber formed by soldering two components together.").

We disagree.  Our claim construction does not command summary judgment.  As we explained when construing "two parts" under BRI, the intrinsic evidence does not limit the way that the two separate pieces are assembled.  Thus, the jury must resolve the factual question as to whether the drawings of the soldered mixing chamber of the Probler 1 were but-for material to

17

patentability of the 172 patent under the construction "two separate pieces." *Cabinet Vision*, 129 F.3d at 600-01 (finding that "the district court misled itself into believing that the jury's fact findings could be merely advisory as to the inequitable conduct, and that the counterclaim could be dismissed because the verdict was not binding on the counterclaim."). Summary judgment on these claims is therefore inappropriate.

### III. Conclusion

For the reasons explained, Carlisle's motion for summary judgment of no infringement (DI 329), and Graco's motion for partial summary judgment and supplemental claim construction (DI 335) are both granted in part. Carlisle's ST1 spray gun does not literally infringe the asserted claims of the 172 patent as a matter of law, but the jury will resolve infringement by equivalents. The claim term "two parts" means "two separate pieces" under *Phillips* or BRI, but our construction does not limit how those pieces must be assembled. And the jury will advise on the materiality of the Probler 1 drawings under that construction.